Mr. Chief Justice Marshai.t, .delivered
 

 the opinion of the Court.-—
 

 This action was brought, in the Circuit Court for the District ■of Columbia, by .Elisha Riggs,, the. defendant in error, tore-cover back a sum of money paid on a contract for the purchase of stock.
 

 The declaration contained two counts; the firsts on the con- ' tract, which was in writing; .the second for mohe.y had and received by the defendant, to the use of the plaintiff'.
 

 At the trial, the plaintiff in-the Circuit Court, offered testimony to prove the contents of.the contract, having first given notice to the defendant to. produce the duplicate copy which had been delivered to him, when it was ■ executed, and made an. affidavit””that the copy which had been retained-by him, was either destroyed or lost.
 

 ■ The. secondary evidence was admitted, the defendant in the. Circuit Court reserving all objections, both to its admissibility and competency. ■
 

 The first count in the declaration states-a conversation between the -parties on the 15th of May 1818, concerning the sale of- tlie' stock, which the said John Tayloe held in. the Central Bank of Georgetown; and alleges, that it was then and there agreed, that-the said John should sell to the said Elisha, the stock which' he held in. the said bank, amounting to 7642 shares at par; and further, that the said John represented that a dividend of four per cent, would be made on the said stock, at-the ensuing first Monday in July, and insisted that the said Elisha should advance to him, in addition to the par value, -so much of the said dividend as the said stock had already earned, which according to a calculation then made.
 
 *595
 
 . amounted to three per. cent! The declaration further .alleges, that the said Elisha,' confiding in the representations .:of. the said John, did agree to' advance the supposed earnings of the said stock. The agreement was -then reduced to writing, and signed by the parties. It was further agreed, that the said Elisha might confirm' or annul the contract in- . days. . The declaration further state?, that, confiding entirely to the representations pf the said John, the said Elisha did 'agree to confirm the said-agreement^ and did agree-to buy the said stock, at par price, apd to advance to. the defendant the profits, which the stock was . supposed-to have earned.
 

 The declaration then charges, that the stock wa:s transferredj its par value paid, and the additional sum of three:pér cent.', its supposed earnings, amounting to 1902 dollars, paid; The declaration further charges, that at the time of the contract, ■the hank had made.no profit op which a dividend could be de-. clared; and that it was not competent- for the-said bank, on the said first Monday in July, then next following, to -declare any dividend; and, that in fact the bank did not declare any dividend on the said stock,' of -Which the said defendant had.- notice.; by means whereof he became.liable-and bound to refund tfie money so- advanced, for the supposed, earnings of' the said' stock, and being so. liable,'he in consideration thereof assumed,- &c.
 

 William Hebb, a witness produced , by the plaintiff below:, deposed, that he came into a r.qom in .which the parties Were sitting, when, the said; Tayloe informed him, that the said Riggs was about to-purchase his stock; and he requested the-witness to take a seat and be an evidence to the contract. The said. Riggs then asked the said Tayloe what- were his terms?' He answered that he would take pari; with the dividend- which would. be declared-at the next periodical term, which he thought would be finir per cent. Mr. Riggs said, he supposed Mr. Tayloe meant only the interest which had .accrued at that time, to which'Mr. Tayloe assented; a calculation was.then made, and the supposed profit estimated at three.per cent! The plaintiff asked .time to'consult his friends, and said- he would take the stock on the terms offered.- The-plaintiff, at-the request of the defendant, drew up a memorandum of the agreement, which . was read over hastily iri the presence and hearing of. the witness. It wascopied,. signed, and attested .by the witness, and-each party took orie.-
 

 He understood,' a day or two afterwards, that the contract .was affirmed. On -being -cross-exarh-inedy the witness said that he did not recollect whether .the written' contract expressed that par was to be paid-for the stock, nor that any advance upon the stock was specified'; nor does he recollect, how the contract
 
 *596
 
 wa's expressed» But his impression and belief is, that the understanding of the parties was that three per cent, was to be paid upon a .contingency that the next "dividend amounted to four per cent., and that'the"written contract was to the same effect.
 

 The counsel for the defendant below, .objected both to the admissibility and competency of this testimony: but the Court overruled his objections, ajid permitted it to go to the jury. To this opinion he excepted.
 

 The first question to be considered, is, whether parol testimony, could, in this case, be let in to .prove the written contract.
 

 The rule of' law is, that the bfest evidence must, be given of which the nature of the thing is capablethat is, that no evidence shall be received, which presupposes greater-evidence behind, in the party’s possession or power. The withholding of that better evidence, raises a presumption, that, if produced, it might not operate in his favour. For- this reason, a party who is iii possession of an original paper, or who has" it.in his ■power, is not permitted to give a cop y in evidence, Or to prove its contents.
 

 When, therefore, the plaintiff below offered to prove the contents Of the written contract on which this suit was instituted, the defendant might very properly require the contract itself. It-was itself superior evidence of its contents, to any thing depending on the memory of a witness. It was once in his possession, and the presumption was that it was still so.- It was necessary to do away"this presumption, or.the secondary evidence must bfc excluded: How is it to be-done away? If the loss or destruction of the paper can be proved by a disinterested witness, the difficulty is at once removed.. But papers of this description’"generally remain in -possession df the party himself, and" their Idss. egri be known in most instances only to himself. If his own affidávit cannot be- received, the loss pf a written" contract, the contents of which are well known to-others; or a. copy, of- which can be proved, would amount to a complete loss of - his rights", at least in a Court of Law. The objection to receiving .the affidavit of the party is, that no man can be a witness in his own. cause. This is undoubtedly a sound rule, which ought never to be violated. But many collateral questions arise" in the progress of a cause, to which the rule does not apply.. Questions which do not involve the matter in controversy, but .matter which is auxiliary to the trial, which facilitate the-preparation for it, often depend on the oath of the party. An- affidavit to the materiality of a.witness, for the purpose of. Qbtaining a continuance; "or a commission to take; his deposition, or, an. affidavit of his, inability to attend;
 
 *597
 
 js usually made'by the party, and received without objection. So, affidavits to support a motion for a.new trial-are often' received. These cases,' and others of the same character- which might be adduced, show, that on many incidental Questions which are addressed to the Court, and do not affect the issue to be-tried by- the jury, the affidavit of the party is received.
 

 The testimony, which establishes the loss of a paper is addressed to the Court, and does hot relate to the contents' of the paper. It is a fact which may'be important as letting the party. in to. prove th.e justice of the. cause," but :doe's not itself prove any thing in the-causé. As this fact is generally known only to the party himself, there Would, seem to 1 be a necessity for deceiving his affidavit in -support of it.
 

 In the Courts of Common Law of-.England, we .find'some cases, in which the affidavit of a party has been received, respecting collateral facts which occur in .tlie progress of a cause; , and in Courts of Eqúity, it is usual when'a bill is filed to set up a written instrument which is lost, to annex án affidavit to the bill, that the instrument is lost. In Forbes
 
 vs.
 
 Wale, 1
 
 Sir W. Black. Rep.
 
 532, the plaiqtiff offered a'bond in evidence, attested by two witnesses, oh proving the death of one of themj but being-himself examined, acknowledged the other to-be living. He.was nonsuited. It cannot be doubted, .that had he sworn the other s’ubscribing .witness was dead, he would have been allowed to prove the bond. In Morrow vs. Saunders, 3
 
 Moore’s Rep.
 
 671, the plaintiff was- permitted to have access to a paper in-the possession of the.opposite party, on his own affidavit that there' was.no copy or counterpart, in his possession,' nor had there ever been one .between the parties, except that'in possession of the defendant In Jackson
 
 vs.
 
 Frier, 16
 
 John.
 
 193, the Supreme Court of New-York indicated, the opinion, that secondary evidence might be admitted to prove the contents of a paper, .on ther affidavit of thé’party to its loss. Mr. Chief Justice. Spencer,'in delivering the opinion of the Court, quoted’ Godbolt, 193, in which the'Court refused to permit the depositions pf witnesses taken in a suit between th.e same parties,-to be read, unless affidavit be made that tlie witnesses were.dead; and also
 
 Godbolt,
 
 326, in which tfie Court said} that if the party cannot find' a witness,' he is as it were. dead unto him; and his deposition, in an English Court, in a causé between the same parties, may be allowed to be read to the jury, so as.'the party make oath that he didTfih endeavour to find the witness but that he could not.
 

 ■ In the former decisions in this cause; 9
 
 Wheat.
 
 483, this question was, we think, substantially,-though not expressly "determined. '■**
 

 When we compare the mischief to-be apprehended from the
 
 *598
 
 admission of- secondary proof, on the - affidavit of the party, where.there is reason to believe that other-testimony to that .fact cannot be adduced, with the mischief to arise from the absolute exclusion of such an affidavit,- we think the views of justice will be best promoted by allowing the affidavit, notas conclusive evidence, but as submitted to the consideration of the Court, to be weighed with the ‘other circumstances of the case. In the'case before the Court, it is not probable that any'- other testimony of the loss of the paper was attainable;'and we think, the affidavit- of the' party laid a proper foundation for the admission of secondary evidence. Secondary, evidence having been'properly admitted, and the transfer of the stock and the payment of the purchase money-proved, the next inquiry is into its competency, to establish the contract stated in the declaration.
 

 - This not being an action for deceit and imposition, but-on a Written contract, t ie right of the plaintiff to recover is measúr- . éd precisely by-that contract,.a'nd the secondary evidence must. prove it as laid in. the declaration.' ■ The conversation-which preceded the agreement forms no part of it, nor áre the propositions or' representations which were made at the timé, but hot.introduced into the written contract, to be taken into view in construing the instrument itself. Had the written paper been produced, neither party could have bgen. permitted to show his inducements to make it, or to substitute his-understanding of it, for .the agreémentitself. If he was drawn.into it by misrepresentation, that circumstance might furnish-him with a different action, but cannot affect-this.
 

 1 Discarding the representation made by the vendor of the profits of his stock," we - are- to' inquire what was the actual agreement, The declaration states
 
 &
 
 parol agreement to sell and purchase'the stock at par But this.agreement appears not to have been definitive; since a sale of the stock woiilffpass it in its-toen condition, comprehending- the diyidends -.to be thereafter declared upon it; The-parties therefore proceed tó a considera-tibn of'that part of the subject, Which respects-the prófits; and, aftér concurring in the opinion that the. stock was worth par, independent of the hex t ensuing dividend, which-they supposed' would'bcí fopr per cent, calculate how. much of this sUm was al-' ready earned. They found that three per cent, was the proportion of tfiis. estimated profit, which- had accrued at the date of the sale:' 'The whole contract, '.thus --completed, Was reduced1 to writing and signed by the parties." It is. a contract to sell alb thebank. stock of thevendor,“rating the stock itself at par, and the diyidénds which had already ac'crued thereon, at three per cent. ' No stipulation' was made, to réturri this sum' of ..three per .cent, or a part of it,.if no' dividend or a: [ess dividend than four
 
 *599
 
 per cent, should be declared, nor to add to the sum, if a larger dividend should be declared than was estimated by the parties.
 

 Does the testimony offered by the plaintiff in the Circuit Court prove this contract?
 

 A conversation was in its progress between the parties re-' specting the sale and purchase, of the Stock,' when the witness came into the room, and was requested to notice.their agreement. Mr. Riggs then asked Mr. Tayloe, what were his terms?. Mr. Tayloe answered that he would take par, with the dividends which would be declared ait the next periodical term, which lie - supposed would be four per cent. • Four per cent, was assumed' as the dividend which would be declared,- and' three per cent was estimated as the portion of that dividend which.had already accrued. This proposition was accepted, and the agreement reduced to writing.
 

 If the declaration counts'oh one entire contract for the sale of the stock, including the dividend upon aji estimate of the stock, at par, and the approaching dividend at four'per cent.; the testimony supports it: if the declaration counts on two distinct contracts, entirely independent of each, other, this' part of' the testimony does not, support it. The witness' describes a sift-" gle .contract, consisting, it is true, of two distinct items, but both are comprehended' in the same agreement. .
 

 On. being cross-examined, the witness shows a very imperfect recollection of the contract he is endeavouring- to describe: He does not recollect that par was to be paid, nor ..(hat-any advance bn the stock was specified in the contract. , But his impression and belief is, that three per cent, was to be paid upon . a contingency that the next dividend amounted to four per cent.' and that the written contract was to the Same effect;
 

 This''part of the, testimony shows, that what the witness had. previously said, was founded on his recollection of the conversa- - tion between the parties, which formed the verbal agreement, ' not on his recollection of the writing itself. . He does not remember the terms in which the written contract was expressed'; nor that par was to be paid for the stock; nor that any advance was specified, • .He believes that the written-contract conform- ■ ed to the verbal- agreement, and on this belief is founded his ' impression, that the .three per cent, was to be paid on a contingency that the.next dividend should amount to- four per cent. Yet, when we refer to bis description of the con versatipn which constituted the verbal agreement, no part of the consideration money is stipulated to be paid on a contingency.
 

 The declaration does not state a contingent contract; nor is any inference to be drawn W at it was contingent, from any part of the.declaration, unless it.be from the use of the word
 
 *600
 

 vanee,”
 
 which word, or any other equivalent to it, the witness does not remember.
 

 • When a written contract is to be proved, not by itself blit by parol, testimony, no '.vague uncertain recollection concerning its stipulations ought to supply the place of the written instrument itself.- The substance of the agreement ought to be proved' satisfactorily; and' if that cannot be done, the party is in- the con-, dition of every other suitor in Court, who makes a claim which he- cannot support. When parties reduce their - contract to writing, the obligations and rights of each are described, and limited by the instrument- itself. The safety which is expected from them, would be much impaired, if they, could be established upon uncertain, and vague impressions made by a conversation antecedent to the reduction of the agreement.
 

 ' A part of the testimony came out on the cross examination, which serves to show on what uncertain ground the belief- of the witness was founded, that, the three per cent, depended on the contingency,- that the next dividend should amount to four-per cent; . He was asked, Whether the writing was, as deposed by another witness, in these terms, or in' terms to this effect: “I'bind myself to receive at'any time within three days, three per cent, advance upon iny stock in the' Central Bank of Georgetown and Washington.” He answered that the'writing, as recollected by him, was the reverse of the. terms aboveqpro-pounded, inasmuch as the writing described by him-bound the defendant to transfer' the stopk. This ánswer would indicate; that the written contract bound the vendor ■ to transfer his stock; -at any time within-three-days,, at three.per- cent, advance.,
 

 Upon the most attentive comparison we can make of the testimony-given by Hpbb, with'the.contract stated in the declaration, we’think that his evidence does not suppprt the contract as laid, and-was therefore hot competent to sustain the first count. .
 

 The.second count, for money had ánd received, is not supported by any express promise to réfund thé money supposed to be advanced on account of the dividend, if less than four per cent, should. be declared, or if no dividend should be' made. It rests on the promise'which .the law implies, where the consideration totally fails. If the written contract compre-’ hended the dividend, with the stock itself, so that a.n advance of- three per cent, was-, given for the wltple, the circumstance that this entire agreement was founded on ,a calculation'bf the separate-value of the distinct parts, which were the subject of it, would not entitle the purchaser to recover upon this count, because the consideration would hot totally fail. Could the contract for'the dividends- be considered as entirely, distinct from
 
 *601
 
 that for the stock itself? The Court is not prepared to say, that a mere' speculative bargain, where the parties know that they are treating for a thing of uncertain value, which depends on unknown contingencies, and may greatly exceed their estimate, or may be nothing; where the purchaser knows that he buys a chance, as a lottery ticket; is a bargain on which the law will raise a promise to refund the purchase money, if the fconsider-ation should fail. It is therefore the opinion, of the Court, that the testimony does not show a contract which supports the second count.
 

 ' The defendant in the Circuit Court then gave evidence to'the jury, tending to prove that the; contract (was a mere purchase of stock, at an advance of three per cent-.; and then moved the Court to instruct the. jury,- “ that the evidence given by-the plaintiff, either taken by itself, or in connexion with that of the defe.nd.ant, is not. competent and sufficient to be left to the jury, as evidence that the said written contract continued to be ‘executory after the transfer of the stock by the defendant to the plaintiff, and the payment therefore by the plaintiff, as stated by the plaintiff’s evidence; nor, that it contained any stipulation or condition,, that the three per cent, advance on the said stock, was paid or agreed to. be paid by the plaintiff, on a contingency that the next dividend amounted to four per . cent.; or that the defendant should refund, to the plaintiff, the three per cent, advance upon the par value of the stock paid by-'the plaintiff, as aforesaid, in the event of there being no' dividend declared upon such stock, at the then next ensuing regular period for declaring such dividend. The .Court refused tó giVe this .instruction', as prayed, being of opinion, that so much of the said contract'as relates, to the advance of the threé per cent.- -portion of the dividend, is executory; in só far as regarded'the implied
 
 assumpsit
 
 of the defendant to refund the said three per cent- advance,an the event of ther# being no dividend on .the said dividend,.day.”'
 

 It is probable that the Circuit Court might not . have .intended to express an opinion respecting the effect of the testimony, laid before the jury, but we think such. an'opinion is expressed. The Court declares that so much of. the said contract as relates to the advance' of the three' per cent portion of the dividend, is executory,- jin so far as it regarded the implied,
 
 assúmpsit
 
 of the defendant-to refund, 8cc.
 

 .These , words, we think,- determine that the testimony established this implied
 
 assumpsit.
 
 On the question whether such a contract was proved.as'did raise this assumpsit, there was, undoubtedly, much conflicting testimony, and the Court erred,, as we think, in declaring that opinion to the jury.
 

 After several proceedings in Court, which it is unnecessary
 
 *602
 
 to mention, as they do not materially affect the merits of the cause, the plaintiff prayed the Court to instruct the jury, that if from the whole evidence' the- jury should 'be of opinion, that the .defendant in his written contract, did agree to sell his stock at par, and to take.the earnings which the said stock had made-in lieu of the dividend, which- he stated and represented would he declared-at the next dividend day; and if the jury should be farther of the opinion, that the 'plaintiff/did actually advance to the defendant the amount of the said supposed earnings'of the stock, under a belief created by the defendant, that such dividend would be made, that then the plaintiff 'would- be entitled to recover back the mbneyso paid; under such -mistaken im■pression, "if the jury should find from the evidence that there was no. such dividend .declared 5 and that the said stock had not at the. timé of the said-contract, earned-any such supposed .in-: terést or dividend."
 

 This instruction.was ultimately given by the Court.. In discussing its correctness-it is necessary to . recollect that this'is an action on a written contract, not for deceit ormisrepresenta- '. tion in-making that contract. .The inquiry then, is, what was . the contract? Not.how it was obtained. The. representation then of the'-seller respecting the next-dividend, and the belief of the purchaser, .may be discarded.from-the case; and oUr attention must- bé confined to the contract as stated in- the prayer of counsel. .The jury were instructed to find for the plaintiff, if they were satisfied front the-evidence 4h.at the defendant in his' written contract agreed to' sell his stock at par; and to take the earnings which the said stock had made, in lieu of-the- dividend, to be declared at the next dividend day ; and if they . should also be satisfied that the plaintiff did actually advance to the defendant the amount of the said supposed earnings of the - stock, under a belief tiiatsuch. dividend;would be made. , This-instruc.tion,' when given ,on the naked contract stripped qf that alleged misrepresentation which forms no part of it, cannot, we ■think, be supported. ‘.
 

 We. áre-therefore of -opinion, that there is error in the pro-- - ceedings of the Circuit Court,, and that the judgment ought to •be reversed, and' the cause remanded to the Circuit Court, with directions to-set aside'the verdict and award á
 
 venire facias de novó.
 

 ■
 
 -T.h.is' cause -came. bn,. &c. on.-consideration whereof, This Courtis qf opinion that there is erforin the several instructions given by the.Circuit Court to the jury, in this, that the'said Court instructed the jury:that, the evidence given by the plain- . tiff iji that Court,.-was,competent to support both the first and second counts in the declaration; and also.in this, that the said
 
 *603
 
 Court instructed the jury, that so much of the said contract as relates to the advance of the three per cent, portion of the dividend is. executory, in so far as regarded the implied
 
 Assumpsit
 
 of the .defendant .to refund the said three per cent, advance, in the event of there being no dividend on the said dividend day; and also in. this, that the said Court instructed the jury to fijid for the plaintiff, if they should be satisfied from the evidence that the. defendant in. his written contract agreed to sell his stock at par, and' to take the earnings which the said stock had made in lieu of the dividend to be declared at the next dividend day, and that in fact no. dividends were made. Wherefore it, is coni sidered and adjudged by this Court, that the said judgment be, and the .same is 'hereby reversed and annulled, and that the cause be remanded-' to the Circuit Court, with directions to award a venire.
 
 facias, üe
 
 novo, and to take other proceedings according to law.