## JACOB MILLER and NATHAN STIGER v. DAVID WACK and WIFE, and others.

A mortgage given by a guardian to his sureties in the guardianship bond, reciting the bond given to the ordinary, and conditioned "that if the said guardian should and would faithfully comply with the condition of the said bond, by paying over to the minor mentioned in said bond, all the monies in the hands of the said guardian, as guardian of the said minor, when he arrives at full age, then the said mortgage and bond should cease and be void"—creates no *trust* for the benefit of the minor. The mortgagees are the absolute owners of the mortgage: they have the legal and beneficial interest in it, and have a right to treat it as their own.

A second mortgagee, and those holding under him, are to be charged with *constructive notice* of a prior mortgage, on record and undischarged, at the time of the execution and recording of the second mortgage.

When a first mortgage is *cancelled on the record,* the legal priority attaches to the second mortgage, unless it should appear that the first mortgage was improperly and fraudulently cancelled, without payment or satisfaction, and without the consent of the first mortgagees or either of them.

The general rule is, that when matter is set up by the defendants in avoidance of the complainants' claim, it must be proved otherwise than by the answer.

When a bond has been casually lost, a party is at liberty to come into this court for discovery, or for discovery and relief. If he comes for discovery only, it is in aid of his common law remedy. If he comes for discovery

and also for relief, it is usual to attach to the bill an affidavit of the loss of the deed.

This affidavit is not required as *evidence of the loss*, but to establish the propriety of this court's exercising *jurisdiction*. If the defendant by his answer does not admit the loss, the complainant is put upon his proof.

The rule in courts of law, is, that a party in a cause alleging the loss of a paper, is competent to prove such loss, for the purpose of letting in secondary evidence of the contents; but the court will be careful that such evidence is confined strictly to the fact of loss.

The oath of the defendant, in his answer, that the mortgage (he sets up) was *taken away and cancelled by the mortgagor fraudulently, and without his consent*, is to the very point in controversy, and does not come within the rule which admits the oath of a party to prove the loss of a paper, for the purpose of letting in secondary evidence of the contents, &c.

The simple *cancellation* of a mortgage on the record, is not an absolute bar, unless there has been actual satisfaction. It is not conclusive evidence; the facts may still be investigated. But it is evidence of a high character, and sufficient to sustain the rights of all persons interested, unless the party setting up the cancelled mortgage shall show satisfactorily, some *accident, mistake*, or *fraud*.

The answer of the defendant is no evidence of the fraudulent abduction of the mortgage: it cannot be admitted to repel the strong presumptive evidence of payment or satisfaction, arising from the cancellation of the mortgage on the record.

It is the province and the duty of this court, to decide upon the facts and the law, except in cases of real difficulty, growing out of contradictory testimony, or opposing facts and circumstances, which it is impossible for the court to reconcile: then an issue is directed to inform the conscience of the court.

Jan. 1831.

Miller and
Stiger
v.
Wack et al.

THE bill in this case was filed upon two mortgages, given by David Wack and wife, to other persons, by whom they were assigned to the complainants. There was a decree, pro confesso, against David Wack and wife, the mortgagors. The other defendants, Jacob Wack, Aaron Ayres, and Aaron Ayres, jun., by their answer, set up an intermediate mortgage on the same premises, given by David Wack and wife to Aaron Ayres and Jacob Wack. This mortgage sets forth, that David Wack was the guardian of Aaron Ayres, jun.: that he had executed a bond to the ordinary, in the penal sum of two thousand dollars: that the said Aaron Ayres and Jacob Wack were his sureties in the said bond. And the condition of the mortgage was, "now if the said David Wack shall and will faithfully comply with the condition of the said bond, by paying over to Aaron Ayres, jun., the

minor mentioned in said bond, all the monies in the hands of the said David Wack as guardian of the said Aaron Ayres, jun., when he arrives at full age, without any deduction, &c., then these presents and the said bond shall cease and be void," &c. The mortgage was executed and recorded, subsequent to the complainants' first mortgage, and prior to their second mortgage; and was undischarged at the time of the recording of the complainants' second mortgage, but was cancelled on the record three days afterwards.

The defendants in their answer allege that this mortgage was unduly obtained from Aaron Ayres, sen., who had it in custody, by David Wack, the mortgagor, on pretence that he wanted to look at it, and would bring it back again; and that he fraudulently took it to the clerk's office and had it cancelled on the record, without the consent of the mortgagees, and without payment or satisfaction. And they insist that the cancellation is fraudulent and void, and set up this mortgage as a subsisting lien upon the property, and entitled to priority over the complainants' second mortgage; and whether it was or not, was the question in this case.

The case was argued in January, 1829, and the opinion of the court delivered in April, 1829; in which the Chancellor, declaring "that under the circumstances he could not determine that the mortgage of the defendants had not been cancelled with the consent of the mortgagees," directed an issue to ascertain that fact, if the defendants required it. The defendants elected to take the issue, and gave notice thereof to the complainants' counsel. The complainants obtained an order for re-hearing; and the cause came on for farther argument, and for final hearing and decree. The facts appear in the opinion of the court.

*E. Van Arsdale*, for the complainants.

*N. Saxton*, for the defendants.

THE CHANCELLOR. David Wack, being the owner of ninety-nine acres of land in the county of Warren, mortgaged the same on the 21st May, 1824, to George McCracken, for two hundred

and fifty dollars. This mortgage, having been duly registered on the 24th May, 1824, was on the 27th May, 1825, assigned over by McCracken to John Allen Taylor, for a valuable consideration. On the 12th April, 1825, David Wack mortgaged the same premises to the said John Allen Taylor, to secure the payment of eight hundred dollars. This last mortgage was registered on the 16th of the same month of April. On the 21st August, 1826, Taylor being the holder of both mortgages, assigned them to the complainants; who now seek to foreclose the equity of redemption and sell the mortgaged premises, to raise the money due them. Aaron Ayres and Jacob Wack are made parties as being subsequent mortgage creditors, and Aaron Ayres, jun. as holding a subsequent judgment.

The bill has been taken, pro confesso, as against the mortgagor. Aaron Ayres, Jacob Wack, and Aaron Ayres, jun. have answered. They set up by their answer, that about the year 1820, David Wack became the guardian of Aaron Ayres, jun., who was then a minor: that he entered into a guardianship bond with Aaron Ayres and Jacob Wack as his securities, in the sum of twelve hundred dollars: that to indemnify them he gave them a mortgage on the premises in question, conditioned for the faithful execution of the trust: that for the accommodation of David Wack, the mortgagor, this mortgage was given up by the mortgagees to be cancelled, and was actually cancelled, and a new, mortgage was given on the 22d May, 1824, as a substitute which was registered on the 24th May, 1824. This second mortgage was placed in the hands of Aaron Ayres, one of the mortgagees; who alleges in the answer, that David Wack, the mortgagor, afterwards came to his house and requested to see the mortgage; that on its being handed to him he refused to give it back, and contrary to the will of the said Aaron Ayres he kept and carried away the mortgage, and afterwards procured it to be cancelled of record. They further say, that David Wack afterwards, on the 11th June, 1825, made a third mortgage to Ayres and Jacob Wack, which he procured to be registered on the 1st day of July, 1826; but that he did not deliver it to the mortgagees, or either of them, until about the time of the recording of the last mortgage, when he met them at Hacketstown and

there offered to them the last mentioned mortgage, which they refused to accept in lieu of the former mortgage; but that Jacob Wack, one of the mortgagees, took possession of it as a farther or collateral security only, and at the same time demanded the former mortgage. David Wack afterwards gave up the former mortgage, cancelled, to Jacob Wack, who delivered it to the said Aaron Ayres, jun. on his becoming of age: and Aaron Ayres, jun. now sets up this mortgage as a subsisting lien on the premises, prior to the second mortgage of the complainants.

The original mortgage given by David Wack to Aaron Ayres and Jacob Wack, does not appear to have been given for the benefit of Aaron Ayres, jun., the minor. He sets up in the answer, that it was upon condition that the money was to be secured by mortgage, that he chose David Wack for his guardian; but the mortgage is evidently taken by the securities of the guardian, for their indemnity. They were liable to the ward by means of the guardianship bond, and their object was to protect themselves from any danger or loss arising from that liability. There is, then, no trust connected with the mortgage. The mortgagees were the absolute owners, having the legal and beneficial interest in it. They treated it as their own, and very properly. The first mortgage was delivered up by them to be cancelled for the accommodation of Wack, who wanted the property cleared to settle some matter of boundary with one of his neighbours. A second mortgage was taken as a substitute, with the same proviso as the first; and they were at liberty to deliver up this security at any time, and for any purpose. This second mortgage came into the possession of the mortgagor, (at what time is not stated,) and on the 19th of April, 1825, was cancelled of record. Prior to this cancellation, viz. on the 12th of April, 1825, the mortgage from David Wack to John Allen Taylor, for eight hundred dollars, was registered. The question is between these two mortgages. The complainants, who hold the Taylor mortgage, insist that the cancellation of the prior mortgage to Wack and Ayres, is a bar to the pretensions of the defendants: that they have the legal priority on the record, and are entitled to retain it in this court. And they further say, that even if the defendants might claim relief on the grounds set out

in the answer, yet that the material allegations on which their claim must rest are proved in no other way than by the answer itself, which is not sufficient. On the other hand, it is insisted that the mortgage from David Wack to Aaron Ayres and Jacob Wack, was fraudulently cancelled; that it was neither "redeemed, paid or discharged," in the language of the act; and that the cancellation is no bar to the mortgage, but that the same is an existing lien on the property; and that the material allegations of the answer are sufficiently proved.

The claim of the plaintiffs is manifest from the record, and therefore no time need be spent in canvassing it. The difficulty arises from the matter set up in avoidance of it, in the answer of the defendants. They allege, that at the time of the registry of the Taylor mortgage, there was a prior mortgage on record from Wack to Jacob Wack and Aaron Ayres, which was uncancelled, and of which Taylor had notice. This is certainly true; and although it is attempted to be made out by those holding under Taylor, that he lent his money on the faith of that mortgage being cancelled, it does not so appear in point of fact. If David Wack had the mortgage in his hands at the time, uncancelled, it is strange that it was not cancelled of record before or at the time when the Taylor mortgage was registered. It was not done until three days afterwards; and Taylor, and those holding under him, are to be charged with constructive notice of this prior mortgage. When, however, the mortgage from David Wack to Aaron Ayres and Jacob Wack was cancelled of record, the legal priority attached to the Taylor mortgage, unless the facts are true, as set up by the defendants' answer, that the mortgagor improperly and fraudulently obtained possession of and cancelled the mortgage, without the will and consent of the mortgagees or either of them, and without having made satisfaction or payment. If these facts are proved, another important question may arise as between these parties.

The principle is settled, that when matter is set up in the answer in avoidance of the plaintiff's claim, it must be proved otherwise than by the answer : *Thompson* v. *Lambe*, 7 *Ves.* 587 ; *Boardman* v. *Jackson*, 2 *Ball & Beatty*, 382 ; *Beckwith* v. *Butler*, 1 *Wash. Rep.* 224 ; *Paynes* v. *Coles*, 1 *Munf. Rep.*

27

373 ; *Bush* v. *Livingston & Townsend*, 2 *Caine's C. in Error*, 66 ; 1 *Johns. R.* 580, *Green* v. *Hart ;* and *Hart* v. *Ten Eyck*, 2 *J. C. R.* 92.

The first inquiry then is, what evidence has been adduced of the facts stated in the answer by Aaron Ayres—for he is the person who had possession of the mortgage, and the only one of the defendants who has any knowledge of the manner in which it was procured by David Wack. There have been three witnesses examined, but neither of them speaks on this subject. It was contended that, inasmuch as the object for which the mortgage was taken was not yet accomplished, the mortgagees would not voluntarily have yielded their security. This raises a presumption in their favour, but it is a mere presumption. They might have supposed themselves safe enough without it ; and the fact that, according to their own statement, they rested quietly for a whole year at least, after the mortgage was withdrawn, shows that such withdrawal did not occasion much alarm and anxiety. After a careful examination of the whole case, I am unable to find any evidence to sustain the facts charged in the answer, nor do I think that the circumstances are such as to justify any proper conclusion in favor of their truth.

But it is contended by the defendants, that the general rule, as above stated, does not apply to this case : that this is one of those cases in which the oath of the party shall be received, *ex necessitate rei*, and to prevent him from being deprived of his rights. There is a class of decisions which authorizes the introduction of the oath of a party, and makes it *quasi* evidence to a certain extent ; and it becomes important to inquire into the principle of those decisions, and whether the case now before the court will fall within it.

Where a bond has been casually lost, a party is at liberty to come into this court for discovery, or for discovery and relief. If he comes for discovery merely, it is in aid of his common law remedy, which is a well settled head of equity jurisdiction. If he comes for discovery and also for relief, it is usual to attach to the bill an affidavit of the loss of the deed. This affidavit is not required as evidence of the loss, but to establish the propriety of this court's exercising jurisdiction. If the defendant, by his an-

swer, does not admit the loss, the plaintiff is put upon his proof: *East India Co.* v. *Boddam,* 9 *Ves.* 466. And this is the gene- ral doctrine of the court with respect to lost papers, on which the plaintiff seeks to recover. The object of the affidavit was, ori- ginally, to give jurisdiction to the court; and therefore it is laid down by a late writer, that if the defendant should not by confession supply the want of evidence of the deed, the plaintiff must, in order to obtain this court's interference, prove to its satis- faction by other means, the original existence, and the loss or casual destruction thereof, and the purport of its contents: *Jer. Eq. Juris.* 359–60. This would seem to be confining the rule within narrower limits than is now done in courts of law. The rule as now settled at law is, that a party in a cause alleging the loss of a paper, is competent to prove such loss, for the purpose of letting in secondary evidence of the contents. But as it is a sound maxim that a party is never allowed to be a witness in his own cause, the court will always take care that such testimony is confined strictly to the fact of the loss, which is merely auxil- iary to the trial, and does not involve the matter in controversy. The testimony, says Chief Justice Marshall, in *Taylor* v. *Riggs,* 1 *Peters,* 597, which establishes the loss of a paper, is adduced to the court, and does not relate to the contents of the paper, nor affect the issue to be tried by the jury. It may be important, as letting the party in to prove the justice of the cause, but does not itself prove any thing in the cause. But admitting the rule to be the same in law and equity, (and I know not why they should differ,) that the oath of a party is received as a foundation for secondary evidence to prove the contents of a lost instrument, does it affect the case now before the court? The object here is not to make use of the defendant's oath for the purpose of intro- ducing secondary evidence, and thereby get at the purport of the mortgage; for the mortgage itself is before the court, and on production the contents of it are manifest. The object is, by that oath, to prove the fact that the mortgage was fraudulently taken away by David Wack. Now that is the very point in contro- versy, and it is perfectly plain that if the defendant's oath can be considered as testimony, he proves by it every thing necessary to enable him to recover; or at all events imposes on the opposite

party the burden of showing that he came honestly and fairly by the paper. He proves by it an important fact in the cause, going to affect the issue; which according to the doctrine of Chief Justice Marshall, cannot be done by the oath of the party. It appears to me, then, that the case now before the court is not at all within the principle of the authorities referred to; and if this is to be considered as an exception from the general rule of evidence, that matters charged in the answer not responsive to the bill, are to be proved, it must be on some other ground.

I am aware there is one case to be found which seems to give countenance to the principle contended for by the defendants' counsel. It is that of *Atkin* v. *Farr*, 1 *Atk.* 287, decided by Ld. Hardwicke. There was a bill filed for the delivery of a bond which had been given to the defendant to read, who took it, and against the consent of the owner, put it in his pocket and went away with it. The defendant admitted the execution of the bond, but set up that it was delivered voluntarily; and the question was, whether the plaintiff had proved his case. The Ld. Chancellor says, " though the proof of the bond's being forced from her is by one witness only, it is no objection in this case, for the plaintiff herself was entitled to make oath of the loss of the bond, and that it was thus taken from her; and as this fact is proved by the oath of one witness against the oath of the defendant in his answer, *and as there is likewise proof of the defendant's offering to execute a new bond; that is a circumstance supporting the evidence of this single witness, sufficient to take it out of the general rule.*" I do not understand that in this case the oath of the party was ever called for, much less that it was relied on by the court. It would have been regular, as we have already seen, to annex to the bill an affidavit of the loss of the bond. It does not appear that even this was done in that instance, and the case was certainly proved without it. I do not feel satisfied to take this dictum of the learned chancellor in its length and breadth, as full authority, unsupported as it appears to be by any other decision, and contrary to the settled principles and policy of the law.

But it is insisted that the oath of the injured party is sufficient, *in odium spoliatoris,* to charge the wrong doer; and it is at-

tempted to bring this case under that rule. The only case cited
of any kind of authority, is that of *Childerns* v. *Saxby*, 1 *Vern.*
207. There an execution had been taken out contrary to an in
junction of the court of chancery, and the defendant in the exe-
cution complained that the bailiff who served the execution had
taken from a certain hiding-place in the house one hundred and
fifty pounds in money, and done great spoil to his goods. The
Ld. Chancellor ordered that the bailiff should make good this
money, "and should satisfy all other damage which the defend-
ant should swear he had sustained." The matter afterwards
came on before the lord keeper King, and it was insisted that this
order was most unjust; for that the most this court would do was
to put the parties accused to purge themselves upon oath;
but by the order of the chancellor, the defendant was to be the
judge of his own damage. But the lord keeper held the order
just, and said, he thought it an idle practice in the court, to put
a thief to his oath to accuse himself; for he that has stolen will
not stick to forswear it, and therefore, *in odium spoliatoris*, the
oath of the party injured should be a good charge upon him that
has done the wrong, and confirmed the order.

I apprehend that a court of equity, at the present day, is un-
der no very binding obligation to consider the doctrine of that
case as sound law, or wholesome justice. I do not find that the
precedent has been followed, and I am not willing to adopt it as
the practice of this court. But without speculating further on
the correctness of the decision, it will be a sufficient answer to
say, that its object was merely personal. It was strictly *in odi-
um spoliatoris*, and to operate upon him *who had done the
wrong*. The case before the court is altogether different. Here
the oath of the party is to have no effect against the wrong-doer.
It is to operate exclusively against third persons, strangers to the
transaction, having legal and vested rights ; and those rights are
to be seriously affected, if not destroyed by it.

Upon this view of the subject, I am fully of the opinion that
the charge of the fraudulent abduction of the mortgage is not
proved, and that the answer of the defendant in that behalf is no
evidence of the fact.

But there is another ground taken by the defendants, which it

is insisted on is sufficient to sustain the priority of their mortgage. They say, there is full proof that the mortgage once existed, and full proof of the contents of the mortgage. They say further, that by the act of the legislature it is enacted (*Rev. Laws*, 464) " that when any registered mortgage shall be redeemed, paid and discharged, it shall be the duty of said clerk, on application made to him by the mortgagor, or person redeeming, paying and discharging the said mortgage, and producing to him the said mortgage cancelled, or a receipt thereon signed by the mortgagee, or his executors, administrators or assigns, to enter in a margin to be left for that purpose opposite to the said abstract, a minute of the said redemption, payment and discharge ; which minute shall be a full and absolute bar and discharge of the said entry, registry and mortgage." And they then contend that the fact of the possession and cancellation of the mortgage is not to be taken as evidence of the legal satisfaction and discharge of the mortgage ; that this must still be proved by the person who holds the priority on the record, as against him who sets up and claims under such cancelled instrument. I do not consider this to be the sound construction of that act ; and it appears to me that a more dangerous one could not well be given to it. Of what use would the cancellation of the record be, if the mortgagee might at any time afterwards set up the cancelled mortgage, prove its original existence and contents, and then call upon the mortgagor or a purchaser, or subsequent mortgage or judgment creditor, to prove the fact of the lawful payment and satisfaction of the mortgage.

The clerk acts, and must act, upon the simple production of the mortgage with the seals torn off, or the mortgagee's receipt endorsed. He has no judicial power ; he is not required to examine witnesses as to the fact of payment ; and it is therefore true that the simple cancellation is not an absolute bar unless there has been actual satisfaction. It is not conclusive evidence. The facts may be investigated in a proper way. Nevertheless it is evidence, and evidence too of a very high character, and sufficient to sustain the rights of all persons interested, unless the party setting up the cancelled mortgage shall show some accident, mistake or fraud ; and this must be shown satisfactorily on his part. If not so shown, the cancellation is conclusive proof of the

payment, more especially in favour of third persons, who have a right to look to the record for protection.

But it is said, if any presumption may arise from the fact of the mortgage having been in the possession of the mortgagor and cancelled by him, the answer, that is the oath of the party, may be received to repel such presumption, and to prove the fraudulent manner in which he obtained it. This does but bring up the question already discussed in another shape. If the answer can be admitted to repel the strong presumptive evidence arising from the cancellation of the mortgage, then the party's own oath to a fact alleged in his answer not responsive to the bill, will be made evidence in the cause, and may be sufficient to support his claim. This, I think, cannot be.

This case comes before the court at this time on an order for further argument as to the expediency of directing an issue, at the request of Aaron Ayres, jun., one of the said defendants, to ascertain whether the mortgage given to Jacob Wack and Aaron Ayres, was or was not cancelled with the consent of the said mortgagees, or one of them. To determine this, it was necessary for me to look into the whole case; and the view taken of it renders the expense of an issue unnecessary. It is the province and the duty of this court, to decide upon the facts and the law, except in cases of real difficulty, growing out of contradictory testimony; or opposing facts and circumstances, which it is impossible for the court to reconcile. Then the issue is properly directed, to inform the conscience of the court: *Le Guen* v. *Gouverneur & Kemble,* 1 *Johns. Cases,* 436; 6 *Johns. C. R.* 255. I consider that the defendants in this case have failed to make out the facts necessary to support their claim, as against the complainants; and being clearly of that opinion, I do not feel authorized to order an issue.

I much regret the necessity which impels me to differ from the opinion heretofore delivered in this cause. If a decree had passed in conformity with that opinion, the habitual respect I have always entertained for the decisions of this court, would have induced me to hesitate long, before I could have been brought to disturb it. But as the whole case is open, and has been thrown upon me, I must pronounce, though with great diffidence, my

Jan. 1831.

Miller and
Stiger
v.
Wack et al.

own judgment, and not that of another. And under these circumstances it affords me pleasure, that if the law is not now correctly dispensed, there is another and higher tribunal, where the errors of this court may be speedily corrected, and the law of the land finally settled.

I am of opinion that the complainant is entitled to a decree for the amount of his two mortgages, with costs,