L. S. FORREST, Plaintiff, Appellee, v. CHARLES OTIS, Defendant, Appellant, BOONE BIBLICAL COLLEGE, Intervener, Appellant.

No. 44051.

November 16, 1937.

H. Pierce Witmer and C. S. Missildine, for appellants.

Ted Paul Sloane and L. S. Forrest, for appellee.

Mitchell, J.—On March 11, 1935, L. S. Forrest commenced this action in equity, claiming to be the absolute owner in fee simple of the following described real estate:

Three (3) acres cut diagonally off the Northwest corner of the Northwest Quarter (NW¼) of Section Nineteen (19), Township Seventy-Nine (79), Range Twenty-Three (23), being the triangular piece of land bounded on the West by Delaware Avenue, on the North by Broadway and on the South and Easterly side by the right of way of the Interurban Railway, all located in Delaware Township, Polk County, Iowa.

The petition alleged that he was credibly informed that Charles Otis, the defendant, claimed some interest in said real estate; and prayed that the plaintiff be decreed to be the absolute owner of the land described, and for costs.

Charles Otis filed answer, in which he denied having any interest in the real estate.

On December 1, 1936, the Boone Biblical College filed a petition of intervention, in which it claimed an interest in said real estate, alleging that one Sarah Davis had entered into a written contract with Charles Kalemkarian, selling the property to him; that said Sarah Davis later sold, assigned and transferred to the Boone Biblical College all of her interest in and to the said written contract of sale and purchase. Intervener prayed that plaintiff's petition be dismissed, at his costs, and that it be decreed to be the owner in fee simple of the premises involved. To this Forrest filed a reply, in which he alleged that in April of 1934 he commenced an action in the district court

of Iowa entitled "L. S. Forrest vs. Charles G. Kalemkarian et al.," Equity No. 48430, praying that title to the real estate involved in this present action be quieted in him, and that a decree was entered in said cause as prayed; that the intervener had knowledge of said action, and that the decree in said action adjudicated all the rights of the parties thereto, including the Boone Biblical College.

There was a trial, at which evidence was offered, and the court entered a decree as prayed for by plaintiff. Defendant and intervener have appealed.

On the 3d day of February, 1933, L. S. Forrest purchased from Charles L. Davis and wife 60 acres of land (three acres of which are here in dispute) and received a deed therefor, which deed he duly recorded on the following day. At the time of the purchase the record title was in Charles L. Davis, in fee simple. Some time afterwards Forrest was informed that the mother of Charles L. Davis, who owned the real estate during her lifetime, had entered into some kind of a contract concerning the three acres in question, with a man named Kalemkarian, but that he had defaulted on the contract, abandoned the property and moved to New Jersey. Thereupon Forrest commenced an action to quiet title against several Kalemkarians, including Charles G. Kalemkarian. Service was had on all of the defendants by publication and they made no defense. On April 16, 1934, a decree was entered, quieting title in Forrest. This will be referred to later as the first suit. No question is here raised that the decree in this first suit was not properly entered.

While the first suit was pending and a few days before the decree was entered, Charles G. Kalemkarian and his wife executed and delivered to Charles Otis a deed, but this was not recorded until after the decree was filed, which cut off all the rights of Kalemkarian.

Shortly after the decree in the first suit was entered Otis recorded a nine-year old deed from Sarah E. Davis to Charles G. Kalemkarian. The undisputed evidence shows that this deed was found among the papers in the estate of Mrs. Davis; that the estate had been closed for more than seven or eight years, and that the deed was delivered to Otis without any order of court or without the knowledge of the administrator, by the attorney who had handled Mrs. Davis' estate and who received the sum of $5 for delivery of the deed.

After the present suit was commenced Otis conveyed the property to the Boone Biblical College.

The college's right to any interest in this property therefore depends first upon its claim under the contract which it says Mrs. Davis assigned to it, being the contract of the sale of. the property by Mrs. Davis to Kalemkarian; and second, its claim under the deed it received from Otis months after this present suit was commenced. If Otis had any interest in this real estate it depends first upon whether there was any contract of sale between Mrs. Davis and Charles G. Kalemkarian, and if there was a contract, whether Kalemkarian had any interest in the contract at the time he executed the deed to Otis, the decree in the first quieting title action having been entered prior to that time.

■■■ First, as to the contract between Mrs. Davis and Kalemkarian: There is not one single word of competent evidence in this record covering the alleged contract. No contract was produced; no evidence was offered of the terms of the contract. No one saw the contract, and, as far as this record is concerned, no one knew anything about it. As far as Kalemkarian is concerned, his right under that contract, if there was one, ended when the decree quieting title in Forrest was entered in the first action. There being no proof of a contract, neither the Boone Biblical College nor Charles G. Otis secured any interest in and to the real estate thru any contract that Mrs. Davis is supposed to have entered into with Kalemkarian.

■■■ Otis claims an interest in this real estate because there was recorded a deed from Mrs. Davis to Kalemkarian, and Kalemkarian had deeded to Otis. And the Boone Biblical College claimed an interest because Otis had deeded to the College. The trouble with this is that the deed which was recorded from Mrs. Davis to Kalemkarian was secured by Otis from the attorney who had represented the estate of Mrs. Davis, some years after the estate was closed. It was never delivered to Kalemkarian, nor to anyone else. It is claimed the deed was found among the papers in Mrs. Davis' estate. Otis paid the attorney $5 for turning the deed over to him. There was no order of court authorizing the delivery. The estate was closed. There was, in law, no delivery of the deed, and by the recording of the instrument title did not pass to Kalemkarian. Naturally

Otis secured nothing by his deed from Kalemkarian, and the Boone Biblical College secured nothing by its deed from Otis.

 It has been generally held that where the instrument relied upon affects the record title to real estate, public policy demands that the proof of its former existence, its loss and its contents, should be strong and conclusive. In 17 R. C. L., at page 1197, we find the following:

"In accounting for the non-production of the original instrument there is no general rule as to the degree of diligence in making the search, but the party alleging the loss is expected to show that he has, in good faith, exhausted, in a reasonable degree, all the sources of information and means of discovery which the nature of the case would naturally suggest, and which were accessible to him. * * * Since therefore it is the policy of the law, adopted with a view to prevent frauds, that title to lands shall pass only by written instruments, the difference is more in name than in fact between giving effect to a parol conveyance of lands and establishing title to lands under an alleged lost deed, on parol testimony of its contents and loss, unless the proof be clear and conclusive. Where the instrument is a muniment of title, public policy demands that the proof of its former existence, its loss, and its contents should be strong and conducive."

In the following language the Supreme Court of the United States announced this rule applicable to the case at bar:

"When a written contract is to be proved, not by itself, but by parol testimony, no vague uncertain recollection concerning its stipulations ought to supply the place of the written instrument itself. The substance of the agreement ought to be proved satisfactorily; and if that cannot be done, the party is in the condition of every other suitor in court who makes a claim which he cannot support. When parties reduce their contract to writing, the obligations and rights of each are described, and limited by the instrument itself. The safety which is expected from them, would be much impaired, if they could be established upon uncertain and vague impressions made by a conversation antecedent to the reduction of the agreement." Tayloe vs. Riggs, 1 Pet., 591, 598, 600, 7 L. Ed. 275, 279.

And so in the case at bar we find there is no evidence that

68

a contract ever existed between Mrs. Davis and Kalemkarian. If one did exist, there is no evidence of the contents of same, or of any assignment. There is no competent evidence of any delivery to Kalemkarian of the deed that Mrs. Davis made. Otis never had any interest in the real estate, and the Boone Biblical College, which claimed under a deed from Otis, therefore had no interest.

In view of such a record we find the lower court was right in entering judgment for the appellee. It therefore follows that the judgment of the lower court must be, and it is hereby, affirmed.—Affirmed.

Chief Justice and all Justices concur.