**UNITED STATES v. HAUGEN.**

No. C–3950.

District Court, E. D. Washington, S. D.

Dec. 22, 1944.

Edward M. Connelly, U. S. Atty., and Harvey Erickson, Asst. U. S. Atty., both of Spokane, Wash., for plaintiff.

Ole Sandvig, of Yakima, Wash., for defendant.

SCHWELLENBACH, District Judge.

In an indictment containing three counts, defendant is charged with possessing, publishing and uttering counterfeit meal tickets in violation of Sections 72 and 73, 18 U.S.C.A. In each count of the indictment, it is charged that the meal tickets purported to have been issued by the Olympic Commissary Company, a corporation, which it is alleged was an agency of the United States of America having, as one of its functions, the furnishing and dispensing of meals to workmen employed upon a defense project at Hanford, Washington, under the supervision of the United States Army Engineers Corps. The indictment alleges that the defendant possessed, uttered and published the counterfeit meal tickets with intent to defraud the United States of America. The defendant entered a plea of not guilty, a jury was waived and the Government's testimony was submitted to the Court. The defendant submitted no testimony and the case was taken under advisement.

The plaintiff's testimony proved without doubt that the defendant, who had been an employee at Hanford, Washington, caused to be printed a thousand meal tickets resembling in form those issued by the Olympic Commissary. There is no question but that he published and uttered the meal tickets as alleged in counts 2 and 3 of the indictment and that, when arrested, he had in his possession 966 of such meal tickets as alleged in count 1 of the indictment. The problem in the case arises in determining whether the Government sustained its burden of proving that the Olympic Commissary Company was an agency of the United States and that the defendant possessed and uttered the counterfeit tickets with intent to defraud the United States. During the trial, defendant's counsel objected to the introduction of each portion of the evidence that tended to support these conclusions. Since the case was being tried without a jury, I admitted the evidence, subject to defendant's objection, with the understanding that I would pass on the validity of the objections after submission of arguments and briefs by respective counsel.

The testimony shows that, in February, 1943, the Corps of Army Engineers commenced construction of a tremendous project at Hanford, Washington, known as the Hanford Engineering Project. The property acquired for the project through

condemnation proceedings in this Court totaled three hundred seventy thousand acres. The purpose for which the project is being constructed is a military secret of high order. Whether the Olympic Commissary Company is an agency of the United States and whether, by the use of the counterfeit meal tickets, defendant might have perpetrated a fraud upon the United States depends upon the contract under which the Hanford Engineering Project is being constructed and the contract by which Olympic Commissary furnishes meals to the construction employees. The plaintiff called, in support of its contention, R. F. Ebbs, a Major in the United States Corps of Engineers who is executive officer of the Hanford Engineering Works. He testified that the construction work at Hanford was being performed by the E. I du Pont de Nemours Company as prime contractor. His testimony was that that contract was secret by orders of the War Department through the office of Chief of Engineers. So secret is the contract that he was not permitted even to reveal the names of the individuals signing on behalf of the Government and du Pont. He testified that Olympic Commissary Company had a subcontract with du Pont and that this, also, was secret. He stated: "It is considered that the contracts cover a very important construction and operation job, and it would be detrimental to the country to reveal their contents." He testified that the originals of the contracts were in the office of the Comptroller General in Washington, D. C., and that, while he had not seen the contracts, he had seen copies of them. He stated that he was not an attorney but that he had a very competent legal staff at his command. He declined to reveal the length of the contracts. Having laid this foundation for the justification of refusal to submit the contracts to the Court or the defendant, Major Ebbs then proceeded to testify orally concerning those provisions of the contract which were pertinent in this controversy. Plaintiff's case on the question of the relationship between Olympic Commissary and the Government and in support of its position that these counterfeit meal tickets were intended to defraud the Government was based exclusively upon this testimony as to the content of the contracts. The one exception was proof in the form of invoices for food which contained a stipulation that title passed to the United States upon delivery to the Olympic Commissary Company. If this defendant were charged with stealing food belonging to the Government, this invoice evidence would be sufficient. Standing alone, it is no proof that Olympic Commissary was a government agency or that defendant intended to defraud the Government. Unquestionably, Major Ebbs' oral testimony, if admissible, was sufficient to justify a conviction in this case. If such oral evidence was inadmissible, plaintiff has failed to make its case.

The right of the Army to refuse to disclose confidential information, the secrecy of which it deems necessary to national defense, is indisputable. Firth Sterling Steel Co. v. Bethlehem Steel Co., D.C., 199 F. 353; In re Grove, 3 Cir., 180 F. 62. The Army Regulation covering this is quoted in the footnote.[1] The determination of what steps are necessary in time of war for the protection of national security lies exclusively with the military and is not subject to court review. United States v. Kiyoshi Hirabayashi, 320 U.S. 81, 93, 63 S.Ct. 1375, 87 L.Ed. 1774. The war power embraces every phase of the national defense including the protection of war materials and the members of the armed forces from injury and from the dangers which attend the rise, progress and prosecution of war. Prize Cases, 2 Black 635, 671, 17 L.Ed. 459; Miller v. United States, 11 Wall. 268, 303, 20 L.Ed. 135; Stewart v. Kahn, 11 Wall. 493, 506, 20 L.Ed. 176; McKinley v. United States, 249 U.S. 397, 39 S.Ct. 324, 63 L.Ed. 668.

Implicit in a correct answer to the question as to the admissibility of this oral, secondary evidence is the understanding that the best evidence rule is a preferential rather than an exclusionary one. The rule requiring the production of documents is not a rule requiring evidence but a rule preferring the thing itself to any evidence about the thing. As Chief Justice Marshall said, in Tayloe v. Riggs, 1 Pet. 591, 596, 26 U.S. 591, 596, 7 L.Ed. 275, "The rule of law is, that the best evidence

---

[1] Army Regulation 380—5 (5). "Secret Material—a. Documents, information or material, the unauthorized disclosure of which would endanger national security, cause serious injury to the interests or prestige of the Nation, or any Governmental activity thereof, or would be of great advantage to a foreign nation, shall be classified secret."

must be given of which the nature of the thing is capable; that is, that no evidence shall be received, which presupposes greater evidence behind, in the party's possession or power." On this basis, the courts have recognized many situations under which so-called secondary evidence is admissible. Among these situations is the one where the original document accidentally has been lost or destroyed, United States v. Pendell, 185 U.S. 189, 22 S.Ct. 624, 46 L.Ed. 866; Robertson v. Pickrell, 109 U.S. 608, 3 S.Ct. 407, 27 L.Ed. 1049; United States v. Sutter, 21 How. 170, 16 L.Ed. 119; where it has voluntarily been destroyed in the course of business or by mistake, Tayloe v. Riggs, supra; McDonald v. United States, 8 Cir., 89 F.2d 128; where it is suppressed by the opponent of the party offering it, Morris' Lessee v. Vanderen, 1 Dall. 64, 65, 1 L.Ed. 38; Dunbar v. United States, 156 U. S. 185, 15 S. Ct. 325, 39 L.Ed. 390; where it is detained by a third party who, by reason of privilege, is not compellable to produce it, De Leon v. Territory, 9 Ariz. 161, 80 P. 348; where it is in possession of a third person who, through collusion with the opponent, refuses to produce it, People v. Powell, 71 Cal.App. 500, 236 P. 311; where it is a physical impossibility to remove the writing into court because the characters exist on something firmly fixed to the realty, Harper v. State, 109 Ala. 28, 19 So. 857; where it is a part of an irremovable judicial or public record, Ronkendorff v. Taylor, 4 Pet. 349, 360, 7 L.Ed. 882; Cohn v. United States, 2 Cir., 258 F. 355; where the original consists of private books of public importance such as banks and title abstracts, People v. Hurst, 41 Mich. 328, 1 N.W. 1027; Crawford v. Branch Bank, 8 Ala. 79. The rule requires the production of the best evidence of which the case admits and that when the evidence offered is clearly substitutionary in its nature and the unavailability of the original raises no suspicion of weakness in the substitute, the secondary evidence is admissible.[2] The Supreme Court stated the rule in this language: "This rule of evidence must be so applied as to promote the ends of justice, and guard against fraud or imposition. If the circumstances will justify a well-grounded belief, that the original paper is kept back by design, no secondary evidence ought to be admitted; but when no such suspicion attaches, and the paper is of that description, that no doubt can arise as to the proof of its contents, there can be no danger in admitting the secondary evidence." Renner v. Bank of Columbia, 9 Wheat. 581, 597, 22 U.S. 581, 597, 6 L.Ed. 166.

▮ In view of the foregoing, I see no merit in defendant's general attack upon this recollection testimony. The admissibility of secondary evidence under proper circumstances, in criminal as well as civil cases, has long been recognized. United States v. Gooding, 12 Wheat. 460, 467, 25 U.S. 460, 467, 6 L.Ed. 693. It is true that in offering the secondary evidence, plaintiff urges me to tread an unbeaten path. I see no insuperable obstacle to traversing that path. The exigencies of war require the withholding of the original document. Its unavailability is due to no fault or design upon plaintiff's part. The ends of justice will be served rather than thwarted by enabling the Government, in cases involving contracts situated as is this, to prove the pertinent portions of their content by secondary means.

▮ However, the plaintiff here has failed to meet the requirements preliminary to the reception of such evidence. While it is not prevented from presenting

---

2 Of persuasive interest in considering this question is the proposed Rule 602 of the Model Code of Evidence promulgated by the American Law Institute.

"Rule 602. Evidence as to Content of Writings; Best Evidence Rule.

"As tending to prove the content of a writing, except an official record, no evidence other than the writing itself is admissible unless

"(a) evidence has been introduced sufficient to support a finding that the writing once existed and is not a writing produced at the trial, and the judge finds that, assuming that the writing once existed and is not a writing produced at the trial,

"(i) it is now unavailable for some reason other than the culpable negligence or wrongdoing of the proponent of the evidence, or

"(ii) it would be unfair or inexpedient to require the proponent to produce the writing; * * * "

The committee's comment on this Rule was: "This Rule imposes the principle of the so-called best evidence rule which as generally stated makes secondary evidence of the content of the writing inadmissible unless failure to offer the original is satisfactorily explained."

such evidence when it seeks so to do, it must present the best evidence available to it. "The principle established by this court as to secondary evidence in cases like this is, that it must be the best the party has in its power to produce. The rule is to be so applied as to promote the ends of justice and guard against fraud, surprise, and imposition." Cornett v. Williams, 20 Wall. 226, 246, 87 U.S. 226, 246, 22 L.Ed. 254. Major Ebbs testified he had never seen the original contract. His recollection was based upon a view of a copy of the contract. It is universally recognized that, in situations such as this, a copy of the copy will not suffice. The circumstances under which that rule applies were delineated by Mr. Justice Story in Winn v. Patterson, 9 Pet. 663, 677, 34 U.S. 662, 677, 9 L.Ed. 266, as follows: "We admit, that the rule, that a copy of a copy is not admissible evidence is correct in itself, when properly understood and limited to its true sense. The rule properly applies to cases, where the copy is taken from a copy, the original being still in existence and capable of being compared with it; for then it is a second remove from the original; or where it is a copy of a copy of a record, the record being in existence, by law deemed as high evidence as the original; for then it is also a second remove from the record." The testimony here shows that the original is in existence in the General Accounting Office. If Major Ebbs, when he checked the copy, had caused a copy of it to be made, that second copy clearly would be inadmissible. Since he could not introduce a copy of the copy, it is clear that he cannot testify as to his recollection of the copy. This follows from the fact that "the fundamental notion of the rule requiring production is that in writings the smallest variations in words may be of importance, and that such errors in regard to words and phrases are more likely to occur than errors in regard to other features of a physical thing." Wigmore on Evidence, 3d Ed., sec. 1242. No showing was made that the plaintiff could not produce a witness who had seen the original. No sufficient showing can be made that would justify, on security grounds, the withholding of a view of the original from Major Ebbs or some other equally reliable Army officer. If the copy which Major Ebbs viewed was a true copy, no harm can come from the exhibition to him of the original. Of less importance, but worthy of considera-

tion, is the fact that Major Ebbs is not a lawyer. In view of the immensity of the project, it seems fair to assume that the Army-du Pont contract is lengthy and, perhaps complicated. By the very nature of things, the Court is not permitted to know whether that assumption is correct. Therefore, it seems not unreasonable to me to require that such secondary evidence be supplied by one trained in the art of drawing and construing contracts.

Since the plaintiff has failed to present the best evidence available to it, I am forced to conclude that I should have sustained the objection to the introduction of such testimony. That being true, it is my duty now to disregard it. Without such evidence, plaintiff has failed to sustain its burden of proving that the Olympic Commissary was an agency of the United States and that the counterfeiting of its meal tickets was calculated to defraud the United States.

Therefore, the action must be dismissed.