THE UNITED STATES, APPELLANTS, *v.* THE HEIRS OF VINCENT RILLIEUX, DECEASED.

This court again decides, as in 11 Howard, 580, that under the acts of Congress of 1824 and 1844, the District Court had no power to act upon evidence of mere naked possession, unaccompanied by written evidence conferring, or professing to confer, a title of some description.

By the treaty of 1763, the land in question passed from France to Great Britain; and the certificate of two French officers in 1765, certifying that the claimant had been for a long time in possession, furnished no evidence of title. No application was made to the British government for a grant.

A purchase from the Indians, whilst the province was under French authority, conveyed no title unless sanctioned by that authority.

In this case, also, there is no proof that the claimants are the heirs of the party originally in possession.

THIS was an appeal from the District Court of the United States, for the Eastern District of Louisiana. The petition was filed in that court by the heirs of Rillieux, under the act of June 17th, 1844, (5 Stat. at Large, 676,) which court decreed in favor of the petitioners. The United States appealed to this court, where it was argued by *M.. Bibb* and *Mr. Crittenden,* (Attorney-General,) for the appellants. No counsel appeared for the appellees.

Mr. Justice CATRON delivered the opinion of the court.

The petitioners aver, that they are the lawful heirs of Vincent Rillieux and Marie Tronquet his wife; and as such heirs, are the true and lawful owners of a tract of land in the parish of St. Tammany, State of Louisiana, " bounded on the South side by Lake Ponchartrain; on the East by Pearl River; on the West by the bayou Bonfouca; and on the North by a line running from the western source of said bayou, and from the head waters of the same to Pearl River" — containing an extent of about one hundred thousand acres.

It is alleged, that this tract of land was purchased in part by

Vincent Rillieux and his wife, the ancestors of the petitioners, from the Biloxi Indians residing thereon, in 1761, by consent of the French government, as appears from a copy of the title annexed to the petition, given by C. P. Aubry and D. N. Foucault, bearing date March 16th, 1765. The said tract of land, at the time the title was given, and before, having been in the possession of Vincent Rillieux, and so continued to be possessed by him and those claiming under him, with consent of the French, Spanish, and American governments, without interruption; and which was used, inhabited and cultivated as private property."

The District Court gave a decree for the land, to the extent claimed by the petition.

Occupancy and cultivation, from an early date, of comparatively small portions of the land claimed, is established by proof; and, also, that the land was claimed by Rillieux's heirs, as property derived by descent from their ancestors; but the extent of claim was indefinite.

Several considerations present themselves in advance of the paper title set up. In the first place, the District Court was exercising a special jurisdiction, created by the act of 1824, where none existed before, and could only take cognizance of such description of claims as the statute allowed. It embraced those who claimed by virtue of any French or Spanish grant, concession, warrant, or order of survey. And the act of June 17th, 1844, added similar claims originating with the British authorities. Jurisdiction to adjudicate written evidences of title, was alone conferred by Congress on the district courts. It follows, that no decree can be founded on mere possession; we so held in the case of Power's heirs, 11 Howard, 580. Congress reserved to itself the power to provide for actual settlers. The act of March 3, 1819, for adjusting claims to lands East of the Island of New Orleans, provided for such claimants as the widow and heirs of Rillieux were; and which act with its various amendments, continued in force until after the act of 1824 expired, and the district courts ceased to have jurisdiction by virtue thereof. The various acts of Congress, bearing on claims founded on occupancy and cultivation, are enumerated in the case of the United States *v.* Power's heirs, 11 Howard, 580.

In the next place: By the treaty of 1763, between France and Great Britain, there was ceded to Great Britain all the country east and north of a line running through the River Iberville, Lakes Maurepas and Pontchartrain to the sea; and as the land claimed lies to the left of this line, the jurisdiction of France over it, ceased with the treaty of peace. And the King

of Great Britain having, by his proclamation of 1763, established the government of West Florida, the colonial Governor exercised the King's power; and therefore, on the 18th of March, 1765, the widow of Vincent Rillieux addressed the Governor, saying, that she had ascertained what the necessary proceedings and submissions on her part were, in order that she might remain in the peaceable enjoyment of her property, situate in the part of the Province where she resided; and therefore, prayed the Governor to accept that letter as her oath of fidelity and submission to the British authority; she being advised by Captain Cambell, that the letter would suffice in her case.   She further proceeds to state: " I have the honor to annex hereto a certificate from Messieurs, the Commandant and Intendant-Commissary of this Province, as a title, which proves the peaceable enjoyment and possession of my said property, believing it to be necessary: my widowed state and my numerous family, give me ground to hope from your goodness all the protection of which I have need, and for which I shall always feel the deepest gratitude."

The certificate of Aubry and Foucault, the Commandant and Intendant, bears date two days earlier than the widow Rillieux's letter, to which the certificate purports to be annexed; and these two papers furnish the only written evidence of title presented to the District Court.   These French officers state, that Madame Rillieux had been in peaceable possession and enjoyment for twenty-four years preceding, of lands " situate in the direction north of Lake Pontchartrain, between the bayou Bonfouca and Pearl River; a great portion of which tract consists of *prairies tremblantes,* (trembling prairies,) quite valueless; and not having a sufficient extent in front, she, Mrs. Rillieux, was compelled in 1761, to purchase from the Biloxi Indians, all that part of the good lands belonging to that nation, lying between the land which she owned and Pearl River, in order to procure the necessary pasturage for at least one hundred cows, so that the land the said lady was in possession, as well by her late husband, as by her, for the last twenty-four years; also what she acquired by purchase from the Biloxi Indians in 1761, as explained above, form to-day a peninsula, (Presque Isle,) bounded by the trembling and immediate lands which border lake Pontchartrain, bayou Bonfouca, and Pearl River.   In faith of which (say Aubry and Foucault) we have delivered the foregoing certificate to the said widow Rillieux, to be used by her in such manner, as she may think proper."

The certificate is not -addressed to the Governor of West Florida, but " to all whom it may concern."   No power to grant land is assumed by the certificate; neither was application

made to the British Governor for a grant. Nor does Madame Rillieux's letter, or the certificate of these French officers at New Orleans, assert that any paper title had ever issued to Vincent Rillieux, or to his widow, for the land claimed, but only that they had been in peaceable possession and enjoyment for twenty-four years preceding.

That portions of the land had been purchased from the Biloxi Indians, amounted to nothing, unless the purchase had been made with the assent of the French colonial government.

This is the true state of the case, admitting that the foregoing certificate was competent evidence for any purpose. But, as it was given by individuals having no more authority to act in the premises than any other third person, it can have no validity or credit attributed to it; and this reduces the case to a naked statement in the petition, with proof of great length of possession and continual claim.

That the District Court had no power to decree on such proof, we have already stated.

The petitioners claim as heirs of Vincent Rillieux and his wife. No proof was introduced to establish the heirship. This of course was necessary before a decree could be made to these individual claimants, as was held by this court in the case of the United States *v.* LeBlanc et al. 12 Howard, 436.

It has also been urged, on the part of the United States, that no decree could be made for any specific tract of land, as no description was given in the certificate of Aubry and Foucault, from which boundaries could be ascertained. But as that paper is of no value, we do not deem it necessary to examine this question.

For the reasons above stated, we order that the decree of the District Court be reversed, and that the petition be dismissed.

### *Order.*

This cause came on to be heard on the transcript of the record from the District Court of the United States for the Eastern District of Louisiana, and was argued by counsel. On consideration whereof, it is now here ordered, adjudged, and decreed by this court, that the decree of the said District Court in this cause be, and the same is hereby, reversed and annulled, and that this cause be, and the same is hereby, remanded to the said District Court, with directions to dismiss the petition of the claimants.