PERALTA v. UNITED STATES.

1. Written documentary evidence, no matter how formal and complete, or how well supported by the testimony of witnesses, if coming from private hands, is insufficient to establish a Mexican grant if there is nothing in the public records to show that such evidence ever existed; though the court remarks that if the claimant can show to the satisfaction of the court that the grant has been made in conformity to law and *recorded,* and that the record has been lost or destroyed, he will then be permitted to give secondary evidence of its contents.
2. A bare possession for a year before our conquest of California insufficient to establish an equity in opposition to the above first-announced rule.
3. In this case the court enforces the necessity of adhering to general rules when experience has demonstrated their wisdom, even though, sometimes, adherence to them should make cases of individual hardship.

APPEAL from the decree of the District Court for Northern California on a claim presented in 1853, by Maria de Valencia, for herself and others, heirs of Teodora Peralta, for a piece of land in California on which they were living; the claim being founded on a grant alleged by them to have been made in the spring of 1846 to the said Teodora by Governor Pio Pico. The case had come of course to the District Court on an appeal from the Board of Land Commissioners established by the act of March 3, 1851, to settle private land claims in California.

The expediente which was produced by the claimant showed that in 1845, the Señora Peralta petitioned the alcalde of San Rafael to obtain a report from the neighbors. or *colindantes* of the tract which she desired to solicit from

the government, in order that the report might accompany her petition to the governor for a grant of the land. On the same day the magistrate certified that the colindantes had stated before him that the *sobrante* or surplus asked for was vacant and might be granted. On the 8th November, 1845, she presented a petition to the prefect, in which she set forth her previous application to the alcalde and the report of that officer, and requesting him to take such further proceedings as might be necessary. This petition was referred by the prefect to the sub-prefect, and by the latter to the first judge of San Rafael. On the 29th November the first judge reported the land to be vacant. On the 20th December the prefect recommended to the governor that the title issue. And on the 18th February, 1846, the governor attached to the expediente an order to that effect.

The expediente containing all these documents was *produced by the claimant. The archives contained no record or trace whatever of any of these proceedings.*

There seemed no reason, perhaps, to doubt the genuineness of any of the papers except the last and most important of all, viz., the order by the governor that the title issue. This order and the signature were evidently in Pico's handwriting, but the court below noted that his signature on this particular document bore little resemblance to his signatures elsewhere found in the archives, the uniform and striking peculiarities of which it had frequently commented upon; but, on the contrary, resembled the mode of signing his name, and especially of forming the letter " P" in it, adopted by him at a much later period.

No explanation was offered of the circumstance that the expediente was found in the claimant's possession.

The Señora Peralta, mother of the petitioner, belonged, it was said, to a well-known and good family, and was a native of the region, with a perfectly fair character. One witness swore that she was occupying the land in 1844; another that she was on it even a year earlier.

The petition itself (or an *amended petition rather*, which differed in important respects from the original petition) set

forth that title, a written document of concession signed by Pio Pico, did in fact issue, granting the land to the said Teodora Peralta; that, as the petitioner was informed and verily believed, the said document of concession, and also a map of the land, and a certificate of possession thereof, were delivered to the said Teodora Peralta, at the time of the said granting of said land, and within the knowledge and distinct recollection of the petitioner, were held and possessed by the said Teodora during her lifetime; that until within a short period the petitioner, and, as she was informed and verily believed, the rest of the heirs, had believed the same to be on file along with the said expediente in this cause; that the petitioner had made and caused to be made diligent search therefor without finding the same, and that she verily believed that the same had become lost or destroyed since the death of the said Teodora.

One of the daughters of Madame Peralta swore to her reception of the grant, and that for about a year previous to its delivery she had been in occupancy under a provisional license, although the case showed no record evidence of the same.

The Board of Land Commissioners, admitting that the proofs of occupancy and cultivation were satisfactory, and that, if the parties had used the proper diligence in procuring the issue of the grant and judicial measurement and formal possession, there might have been no difficulty in the case, still considered that in the absence of the issue of the grant, and a segregation of the land, they could do nothing but reject the claim.

The District Court was apparently of this same view: observing that the reports of the alcalde, the prefect, &c., showed that the Señora Peralta would have had no difficulty in obtaining the land, if she had followed out her original purpose; that the case was thus a hard one for the claimant, or rather her heirs, since she herself was now dead; but still declaring that if by accident or neglect she had failed to get what she might have laid a good foundation for obtaining, and but for accident or neglect might perhaps have got,

in fact, the misfortune was one which that court could not remedy.

*Messrs. Speed, A. G., and Wills, for the United States,* relied on numerous decisions in this court, of which *Romero* v. *United States,*[*] a leading case on the subject, and which Mr. Wills noted had been argued by Mr. Black, adverse counsel here, in opposition to the positions which he would be compelled now to maintain, was one. The counsel also contended that the case had been even more than benignantly enough considered by the Land Commission and by the court below; it being, as was evident from the amendment of the petition in important particulars (afterthoughts plainly), and from the positive oath made by Madame Peralta's daughter as to having seen a petition of which no record could be found, and from other circumstances not necessary to be detailed, a case less of misfortune and accident than of a fraudulent kind.

*Mr. J. S. Black, contra,* acknowledging the rule set up by the other side to be generally true, sought to take the case out of it as an exception; he denied all fraud, and referring to *United States* v. *Alviso,*[†] where there was no archive evidence, and to other cases, submitted that the difficulty, suggested by the fact that the expediente was not found in the archives but was produced by claimants, was fairly explained by the reasonable presumptions, arising from the proof of a *bona fides* from the very beginning, confessed both by the Land Commission and the District Court, of the meritorious qualifications of the grantee; of the integrity of her documentary evidence; of its transmission to and reception from the government authorities; of the undoubted continuity of her possession and claim, accompanied by actual occupation and cultivation, as the permanent family home for a period of some ten years, and under a well-known and recognized

---

* 1 Wallace 721; see also White *v.* United States, 1 Id. 660, and Pico *v.* Same, 2 Id. 279.                    † 23 Howard, 318.

claim of title; that it was also met and explained by the irregularity and want of system shown, as he argued, by various cases which he cited from the Appendix to Hoffman's Reports and from the California Archives and Records, to have existed in the registry and record of Mexican land grants as aforesaid. He argued also that it was accounted for by the analogy of the numerous other cases which could be cited, and which showed, as he considered, that in many claims of undoubted *bona fides* and merit which had been held on behalf of the government to be good and entitled to patent, the expedientes were in some manner returned to the Mexican grantees, and were thus not found in the archives, but in the possession of the claimants themselves, and were by them produced before the Land Commission or United States District Courts, unauthenticated by any archive evidence whatever.

He had himself, it was true, as much perhaps as any counsel at this bar, supported as a general rule, the rule which the other side would apply as an inflexible one to this case. But on previous cases he was stating a rule, not the exceptions to it. Of course he did not overlay his arguments as if he were writing a text-book, with a consideration of everything that might, could, would, should, or possibly ought to qualify his general propositions. The case here was different. It was an exception to a rule, and the rule was to be applied so as to subserve and not so as to destroy justice.

The whole matter rested in judicial construction. It was not an affair of statute. To apply previous decisions on general cases to a case purely exceptional, would be to judge without discrimination. "Statutes," said Hobart, C. J.,\* "are like tyrants: where they come they make all void; but the common law is like a nursing father, and makes void that part only where the fault is and leaves the rest." Even statutes, however, and statutes where the language is positive—the statute of frauds being a well-known instance—have been largely qualified so as to prevent rules intended

---

\* 1 Modern, 36.

for general cases operating to do injustice in such special ones, as they were really meant not for.

Mr. Justice DAVIS delivered the opinion of the court.

This claim cannot be sustained, according to the rules of evidence which this court has established to determine the validity of Mexican titles in California. We are asked to relax the severity of those rules in this case, because it is alleged to be meritorious. Courts administer justice by fixed rules, which experience and wisdom have demonstrated are necessary in the investigation of truth. There will sometimes, in applying those rules to the various affairs of life, be cases of individual hardship; but this does not prove that the rules are unwise, or not the best that can be adopted for the purposes of judicial investigation. The right of property, as every other valuable right, depends in a great measure for its security on the stability of judicial decisions.

The treaty of Guadalupe Hidalgo imposed the obligation on this government to protect titles to land in California acquired under Mexican rule. The country was new, and rich in mineral wealth, and attracted settlers, whose industry and enterprise produced an unparalleled state of prosperity. The enhanced value given to the whole surface of the country by the discovery of gold, made it necessary to ascertain and settle all private land claims, so that the real estate belonging to individuals could be separated from the public domain. Yielding to this necessity, and in obedience to the obligations of the treaty, Congress passed an act on the 3d of March, 1851, to accomplish this purpose. The laws and usages of the Mexican government, as administered in California before the conquest of the country, and the principles of equity, were prescribed as rules which should govern the courts in adjudicating the questions of title. Very many claims were tested by these rules, and found to be valid, and were confirmed; others were imperfect and could not be recognized. Then commenced a struggle, which has never been abandoned, to induce the

courts to fritter away the act of Congress, and substitute parol proof for record evidence. The history of the cases in this court from California, show the extent of the struggle and the result. We have refused to allow oral testimony to prevail when archive evidence was necessary.

The colonization regulations of 1828 constitute the "laws and usages" by which the validity of a Mexican title is to be determined. It is not important to restate the nature and extent of those regulations, for they have been so often commented on that they are familiar to the profession. The Mexican nation attached a great deal of form to the disposition of its lands, and required many things to be done before the proceedings could ripen into a grant. But the important fact to be noticed is, that a *record* was required to be kept of whatever was done. This record was a guard against fraud and imposition, and enabled the government to ascertain with accuracy what portions of the public lands had been alienated. *The record was the grant*, and without it the title was not divested. The governor was required to give a document to the party interested, which was evidence of title, and enabled him to get possession; but this "titulo" did not divest the title, unless record was made in conformity with law.

Written documentary evidence, no matter how formal and complete, or how well supported by the testimony of witnesses, will not suffice if it is obtained from private hands and there is nothing in the public records of the country to show that such evidence ever existed. But it may be said that the archives of the country may be lost or destroyed, and if so, that the party in interest should not suffer. This is true; and if the claimant can show, to the satisfaction of the court, that the grant was made in conformity to law and *recorded*, and that the record of it has been lost or destroyed, he will then be permitted to introduce secondary evidence of it. But the absence of record evidence is necessarily fatal, unless that absence can be accounted for. Testing the case in hand by these principles of law, it cannot be confirmed. There is neither a

grant nor archive evidence. If there had been a grant according to law, the expediente would have remained in the archives; but there is no trace of it there, and it is produced from private hands, which tends strongly to show, that the governor never saw it. If the grant had been made, and recorded in the proper office, possession would have been given to the grantee of the lands which were conveyed. This was not done, and no reason is assigned for the omission. There are circumstances in proof which are calculated to cast suspicion on this claim, but we forbear to notice them.

It is said that an equity arises on account of possession. But the bare possession is too limited to raise any substantial equity, because the claimant only occupied the place about a year before the conquest of the country.

DECREE AFFIRMED.