Mr. Justice DAVIS
delivered the opinion of the court.
A recovery in this case is strenuously resisted, because it is said the individual interest of William Chase .was iusured, and not his interest as a trustee; and, as his only interest was that of a trustee, it follows that the contract of insurance was a gaming one, and void from considerations of public policy.
A contract of insurance, is intended to indemnify one who is insured against an uncertain event, which, if it occurs, will cause him loss or damage. The assured must therefore have *513 an interest in the property insured; otherwise, there is a temptation to destroy it, which sound policy condemns.
If, then, the Howard Company did not insure the interest of William Chase as a trustee (it Í3 conceded ho had no other), the policy is void, although ho was a creditor of the church, paid a fair premium for the policy, and disclosed everything to the underwriter. But the recovery in this case,js based on the ground that William Chase had au insurable interest as trustee, and insured the property for the benefit of the society. The declaration expressly avers that William Chase, being the owner and possessor in trust of the Union Congregational Church, for a premium paid in money, effected au insurance on the property in the Howard Insurance Company. If this were true, aud the proofs sustained it, the verdict and judgment of the Circuit Court cannot be disturbed. It Í3 unnecessary in this case to discuss the general law of insurance with reference to what interests are, or are not insurable. The courts of this country, as well as England, are well disposed to maintain policies, whore it is clear that the party assured had an interest which would be injured, in the event that the peril insured against should happen.
That a trustee having no personal interest in the property may procure au insurance on it, is a doctrine too well settled to need a citation of authorities to confirm it. As early as 1802, the judges of the Exchequer Chamber, in the case of Lucena v. Craufurd,* held, that an agent, trustee, or consignee could insure, and that it was not'necessary that the assured should have a beneficial interest in the property insured, and the rule established by this case, has ever since been followed by the courts of this country and England.†
*514 A trustee, therefore, having the right, is justified in insuring the property, even to its full value, although there is no obligation on him, in the absence of express directions, to insure at all.*
But it is argued, that the legal title to the Congregational Church was vested in five trustees, and that to give validity to their acts, they must act jointly in whatever they do for the benefit'of the property.
It is true, that in the administration of the trust, where there is more than one trustee, all must concur, but the entire body can direct, one of their number to transact business, which it may be inconvenient for the others to perform, and the acts of the one thus authorized, are the acts of all. and binding on all. The trustee thus acting is to bo considered the agent of all the trustees, and not as an individual trustee.† If, within the scope of his agency, he procures an insurance, it is for the other trustees, as well as himself. If he does it without authority, still it is a valid contract, which the underwriter cannot dispute, if 1ns co-trustees subsequently ratify it.‡ In fact, so liberal is the rule on this subject, that where a part-owner of property effects an insurance for himself and others, without previous authority, the act is sufficiently ratified, where suit is brought on the policy in their names.§
It is contended that the contract of insurance, being in the name of Wifiiam Chase, could only cover his individual interest,, or, at the furthest, but the fractional part of the interest which he had as trustee. But the law of insurance is otherwise; for, as any one having any legal interest in property can insure it as his own, and in his own name, without specifying the nature of his interest, it follows that if ’W’il *515 liam‘Chase insured the church with the assent of his co-trustees, for the benefit of the cestui que trust, that the. insurance company cannot complain, that the character of the interest was not incorporated in the policy, unless, if de-' scribed, it would have had an influencé on them not to underwrite at all, or not to underwrite except at a • higher premium than the one actually paid by the insurer.* It has been held in some cases, that the party applying for insurance need not disclose his interest, unless asked by the insurer.
Whether the disclosure of the interest was material to the-risk incurred, and would have enhanced the premium, is always a question of fact for the jury.
Applying those rules and principles of mercantile law, to the facts of this case (for evidence is properly receivable aliunde the policy, to explain the character of the interest insured), is it not apparent, that the defences interposed cannot avail the insurance company? Could Munger, who issued the policy, and was a co-trustee with William Chase, have been in ignorance, that the property was insured for the benefit of the' parish ? If so, why was he not called to contradict William Chase, who testified that although he paid the premiums on the original policy, and.for each renewal, Out of his private funds, yet it was done for the parish and with the assent of the trustees.
If this statement was untrue, and Munger did not authorize the payments of .the premium on account of the parish, it was surely his duty to the company he represented to have deified it. Not having done so, the inference is irresistible that William Chase told the truth. If he did, there is an end of the controversy, for an assent on the part of the trustees to the payment of the premiums, is an assent to the procurement of the policy of insurance. Besides, this authority was a continuing one, for the policy was several times renewed, and each timé for the benefit of the parish. The jury had no right to disregard the evidence of William *516 Chase,-for he was called by.the defence, and was the only witness sworn on the trial. And why was the sum for which each policy was given, inserted in the other, unless to show that it was one and the same transaction ? If the insurance to William. Chase was not a part of the general plan of the trustees to insure the church property, it is not easy to see why the fact of such insurance is recited in the policies issued by the other companies. On what ground, then, can the Howard Company resist the payment of this demand? William Chase swears he acted for the parish with the assent of the trustees; confirmatory evidence is furnished by the policies of insurance, and there is not a particle of countervailing testimony. Why the trustees, in insuring the church for fifteen thousand dollars, allowed one policy to issue in the name of William Chase, payable, in case of loss, to G. M. Chase, is not disclosed by7 the record; but it is a fair inference, from the evidence, that it was designed, if the peril insured against should occur, to appropriate the money to the use of William Chase, and thus discharge in part the indebtedness of the society to him; and that William Chase, under the direction of the trustees, chose to have the money paid to his creditor, furnishes no defence to the insurer. '
As we have seen, -William Chase, with the assent of the trustees, could insure the trust title in his own name, and whether the party appointed by him to receive the money, after having recovered it, can retain'it to his own use, or must pay it to the trustees, is wholly immaterial to the insurer. This depends-on the private arrangement between the trustees, William Chase and Grenville M. Chase, with which the Howard Company has no concern.*
If the trust property was insured, and the benefit of the insurance-goes to the society, and there was no concealment or unfair dealing which could avoid the risk, then the underwriter is concluded from any further inquiry. That there could have been no undue concealment, is very evident, because Munger, the agent of the underwriter, was a co-trustee *517 with William Chase, and had equal knowledge with him of the Avliole transaction.
The'foregoing views dispose of this case, and it is unnecessary to refer in detail to the charge of the Circuit Court, because it was in conformity to them;
The instructions asked by the insurance company were properly refused. A portion of them were right-in the abstract, but would have misled the jury, there being no evidence in the case applicable to them. The rest were inconsistent with the law of the ease as given in this opinion.
The judgment of the Circuit Co’urt is
Affirmed with costs.
Mr. Justice MILLER dissented.

 3 Bosanquet & Puller, 75.

 Columbian Insurance Company v. Lawrence, 2 Peters, 25; S. C., 10 Peters, 510; Swift v. Mutual Fire Insurance Company, 18 Vermont, 313, note by Redfield, J.; Goodall v New England Fire Insurance Company, 5 Foster, 186; 2 Greenleaf’s Evidence, § 379; Parsons’s Mercantile Law, chapter 18, § 3; Putnam v. Mercantile Insurance Company, 5 Metcalf, 386; Angell on Life and Fire Insurance, §§ 56, 57, 73; Craufurd v. Hunter, 8 Term, 13.

 Lewin’s Law of Trusts and Trustees, 383; Page v. Western Insurance Company, 19 Louisiana, 49; 1 Phillips on Insurance, 163; Angell on Fire and Life Insurance, § 73.

 The Layf of Trusts and Trustees, by Tiffany and Ballard, pp. 539, 540, and the cases there cited.

 Blanchard v. Waite, 28 Maine, 59.

 Finney v. The Fairhaven Insurance Company, 5 Metcalf, 192.

 Parsons on Mercantile Law, chapter 19, § 3; 1 Phillips on Insurance, 165, 30; Columbia Insurance Company v. Lawrence, 10 Peters, 516.

 King v. The State Mutual Fire Insurance Company, 7 Cushing, 7.