# UNITED STATES *v.* PENDELL.

APPEAL FROM THE COURT OF PRIVATE LAND CLAIMS.

No. 211.  Submitted March 20, 1902.—Decided April 21, 1902.

This was an appeal from a decree of the Court of Private Land Claims, confirming the title of the appellees to a tract of land in New Mexico. *Held*, that in the absence of any sufficient attack upon the record, or of any evidence on the part of the Government going to disprove or discredit the averments therein, it formed enough of a basis for the finding of the court below that there was a grant made as stated in its findings, and that such grant and the record thereof in the archives had been destroyed under the circumstances stated.

The treaty of December 30, 1853, between the United States and Mexico, and the act of Congress in support of it, were not intended to debar parol proof of the existence and of the contents of a grant which had been destroyed under the circumstances detailed, or that, under such circumstances, a presumption that the grant had been recorded could not be indulged.

In this case the evidence of possession was sufficient, in connection with the other evidence, upon which to base a presumption that the petitioner had a title to the land, which should be confirmed.

THE case is stated in the opinion of the court.

*Mr. Solicitor General, Mr. Matthew G. Reynolds* and *Mr. William H. Pope* for appellant.

*Mr. T. B. Catron* for appellees.

MR. JUSTICE PECKHAM delivered the opinion of the court.

The Government appeals in this case from a decree of the Court of Private Land Claims in favor of the appellees, confirming their title to a certain tract of land in the county of Doña Ana, Territory of New Mexico, alleged in the petition to contain four square leagues. The petition of the appellees alleged the making of a grant to their predecessors prior to the year 1790 of a tract of land known as Santa Teresa; that the grant

was a good and valid one, and the grantee entered upon and took possession of the same, and that he and his heirs and assigns continued in peaceable possession up to and after the ratification of the treaty of December 30, 1853, between the governments of Mexico and the United States, by the terms of which treaty territory, including the Santa Teresa grant, was transferred to the sovereignty of the United States. The petition then alleged that in the year 1846, while the original documents of title were in existence in the town of Paso del Norte, in the State of Chihuahua, where the heir resided, the place was occupied by the military forces of the United States, and the original documents of title and the official registry where they were recorded were destroyed by the American forces; that proceedings had been taken on January 7, 1853, for the purpose of perpetuating evidence of the title, and in accordance with which the judicial authorities reëstablished the boundaries and monuments of the grant, and placed the heir in formal and legal possession of the same on January 16, 1853. A certified record of these proceedings was alleged to be on file in the office of the United States surveyor general for the Territory of New Mexico, a duplicate copy of the same in the Spanish language, with a translation also in duplicate, being filed with the petition. The boundaries of the grant were stated, and the petitioners averred that they were the owners in fee of the land contained in the grant by inheritance and purchase from the original grantee, Francisco Garcia, and that the title of the original grantee, his heirs and assigns, in and to the grant was complete and perfect at the date when the United States acquired sovereignty over the Territory of New Mexico, and also at the time of the ratification of the treaty between the United States and the Mexican Republic, known as the Gadsden purchase, on December 30, 1853; and it was averred that the land had been in the peaceable and undisturbed possession of the original grantee, his heirs, etc., from the date of the making of the grant to the present time; and that there was no person in possession of the land claiming the same adversely to the petitioners or otherwise than by lease or permission from them.

The answer of the United States denied all the material

averments of the petition, and denied that the petitioners were entitled to the relief or any part thereof prayed for, and asked that the petition should be dismissed. Subsequently certain persons, claiming adversely to the petitioners, entered their appearance by their solicitor as defendants.

The principal issue in the case in regard to the boundaries of the alleged grant related to the southern line, the petitioners claiming that it was located at the international boundary line, while the Government claimed it was above the Southern Pacific Railroad bridge, a considerable distance north of that line. The interests of the individual defendants, who were co-defendants with the Government, were upon the tract of land lying between the international boundary and the line of the Southern Pacific Railroad bridge. The decree of the court fixed the south boundary at the point contended for by the Government, thus leaving the lands in which the individual defendants were interested untouched, and as this location of the line has been acquiesced in by the petitioners, the case no longer has any bearing upon the interests of those defendants.

The decree of the court was in favor of the petitioners, establishing their grant, with the southern line thereof as stated, and found that the petitioners were the grantees or assignees of the title of the original grantee, Garcia. Two of the judges dissented from the opinion and judgment of the court upon grounds stated in their opinions. The court made the following findings of fact:

"That prior to the year 1790, in accordance with the petition of Francisco Garcia, a citizen of the province of New Mexico and Kingdom of Spain, then and there duly made and presented to the duly authorized representatives of the King of Spain in and for New Biscay, which is now the State of Chihuahua of the Mexican Republic, the said authorities and representatives of the Crown and the King of Spain, by virtue of the power and authority in them vested as such, and in accordance with the laws, usages and customs of the said Kingdom of Spain, made to the said Francisco Garcia a grant of a certain piece and parcel of land situate in the county of Dona Ana, in the Territory of New Mexico, as at present constituted,

the same then being a dependency and province of the said Kingdom of Spain, said piece and parcel of land so granted as aforesaid being bounded, described, located and designated as follows:

"The tract of land known as the ' Santa Teresa:' Bounded on the north by that bend known as the ' Cobrena;' on the south by the bend of the Piedras Paradise, the same being somewhat to the north of the present location of the Southern Pacific Railroad bridge, where the same crosses the Rio Grande del Norte; on the east the old bed of the said Rio Grande del Norte, as the same ran and existed in the year 1853; and on the west the brow of the ridge running parallel with the said river.

" 2. That thereupon then and there the said Francisco Garcia was duly placed in legal possession of the said grant by officials to that end duly authorized by the laws, usages and customs of the said Kingdom of Spain, according to the laws, usages and customs then in force.

" 3. That the land included in the said outboundaries continued in the possession of the said grantee, his heirs, legal representatives and assigns, from the time of the making thereof, prior to the year 1790, as aforesaid, down to the present time, and that the petitioners herein have succeeded in part to the rights of the said original grantee.

" And the court thereupon finds, as matter of law, that by reason of the facts aforesaid an imperfect or equitable title and right such as the United States under the stipulations of the treaty of Guadalupe Hidalgo ought to recognize and confirm to, the said land was vested in the said original grantee aforesaid, which right and title existed at the date when the United States acquired sovereignty over the country now embraced within the Territory of New Mexico, within which the said grant is situated, and that the petitioners herein are entitled to have the same confirmed to the heirs, representatives and assigns of the said original grantee.

" It is therefore adjudged, decreed and specified that the said private land claim, the subject of this suit, is a valid claim against the United States of America for the land included within

the natural boundaries above set forth, and the claim to the said land grant as designated, located, bounded and described herein be, and the same hereby is, confirmed to the heirs, legal representatives and assigns of the said original grantee, excepting, however, from this confirmation any right or title to any gold, silver or quicksilver mines or minerals of the same, the same remaining the property of the United States."

The Government now raises several objections to these findings, and it is stated: (1) that there was no evidence that any grant by an officer authorized to make it had ever been made to the original grantees from whom the petitioners derived title; (2) that there is no evidence that the grant, even if one were made, was ever recorded as required by the treaty with Mexico, dated December 30, 1853, concluding the Gadsden purchase, (10 Stat. 1031, 1035,) the sixth article of which provides that no grant made prior to September 25, 1853, will be respected or considered as obligatory which has not been located and duly recorded in the archives of Mexico; (3) that there was no sufficient evidence of possession upon which to base a presumption that a grant had ever been made.

1. For the purpose of proving that a grant had once been made of the land in question, the petitioners introduced in evidence a correct copy of the original documents showing the proceedings taken before the second civil judge of the canton, the original of which was on file in the office of the judge at Paso del Norte. From these proceedings it appears that on January 7, 1853, José Maria Garcia, residing in the then town of El Paso del Norte, presented to the second civil judge, etc., a petition, in which he alleged that he was the testamentary executor under the will of his deceased mother, the widow of Garcia, and that among the property of that estate was a ranch called Santa Teresa, the document of which he had lost when the American forces took possession of the town, and he prayed that in order to supply in some manner the lack of the original document there be taken the testimony of certain reputable persons existing in the town, who knew that these documents were the title to the land in question, which prior the year 1790 had been possessed by his father and thereafter occupied by his family until the In-

dians caused them to leave the premises. Pursuant to the petition the judge cited the witnesses named therein to appear before him, which they did, and some of them testified to the existence of certain documents relating to the ranch Santa Teresa; that they had seen those documents relating to that ranch and had seen them on file in the archives, and that they were authenticated by one of the lieutenant governors that came into the district about the close of the last century, and that by reason of the father of one of the witnesses being an employé of the town after 1821, such witness saw the original documents as to said ranch on file in the archives of his father's office, and which documents were lost when the Americans took possession of the archives of the town; that the town had been occupied by the American forces, and it was a notorious fact that those forces took a part of the public archives, and also occupied José Maria Garcia's house, taking therefrom documents relating to his property and papers of importance, among them the documents of such ranch. Possession of the ranch from the time of the alleged grant was also proved. Upon evidence of this nature, testified to by several witnesses, the judge made a finding in favor of Garcia as follows:

"In view of the foregoing judicial inquiry with which the executor, José Maria Garcia, has proved legally the possession that for many years they have had of the ranch called Santa Teresa, above the dam of the town and the Muleros bend, and it appearing that they have ever had titles to said property, and these have been lost, and from what appears from the testament and judicial inquiry there is given to the executor José Maria Garcia, for himself and in the name of the co-heirs, *without prejudice to any third party proving a better right,* the real, actual, personal, corporal possession, or that which better corresponds in law, by reason of immemorial possession, of the Santa Teresa ranch, with the enjoyment and benefits of the lands, woods and pastures, and all other products to be found on said premises, and it is ordered that he be protected and defended therein, warning all not to interrupt, or molest him in said possession and free use that he may deem fit to make

thereof, without he being first heard and judgment rendered against him in court after a trial."

The judge also ordered that Garcia should at a certain day named attend with the judge and witnesses, in order that he might be placed in possession, and it is afterwards recited that Garcia went to the place named with the witnesses and was placed in possession of the land described in the petition. This record of all the proceedings thus taken formed part of the archives of the office of the judge, and was an official public document belonging to such archives, as testified to by the successor of the judge. It was not the record of the original grant, such as is referred to in the treaty of 1853, but only a record of the proceedings just mentioned, and was contained in a book or collection of papers, endorsed 1853. The record was received in evidence under the objection of the Government, one of the objections being that the whole proceeding was *ex parte,* and therefore incompetent as evidence for any of the parties. The court below regarded the proceeding as in the nature of one to perpetuate evidence, and held that the testimony had been taken under the provisions of the law of the Republic of Mexico of May 23, 1837, and in the judgment of the court the record was therefore admissible in evidence. The law is said to be a reënactment of article 14 of the decree of July 22, 1833. Reynolds, p. 173. As translated the law reads: "Art. 14. The district judges, with respect to the towns where they live, shall have cognizance, by way of precaution, with the alcaldes of the same, in the making of inventories, evidence *ad perpetuam,* and other judicial proceedings of like nature, in which there is yet no opposition of parties."

We are not prepared to say that the record thus put in evidence was void or irregular under the law just quoted. The judgment by its terms does not assume to be conclusive. It was a judicial inquiry made according to law, before a judicial officer of the State, and while the judgment gives to the petitioner, on account of the grant proved, the lands described in his petition, yet such judgment is by its terms " without prejudice to any third party proving a better right," and it gives subject to such proof " the real, actual, personal, corporal pos-

session, or that which better corresponds in law, by reason of immemorial possession, of the Santa Teresa ranch, with the enjoyments and benefits of the lands, woods and pastures, and all other products to be found on such premises," etc. In other words, the judgment recognizes his possession and reaffirms the title of Garcia.

In the absence of any sufficient attack upon the record or of any evidence on the part of the Government going to disprove or discredit the averments contained therein, we think it formed enough of a basis for the finding of the court below that there was a grant made as stated in its findings, and that such grant and the record thereof in the archives had been destroyed under the circumstances mentioned. While this evidence, as to the existence of a grant, possibly might not be sufficient of itself upon which to found a decree confirming a title under it, yet taken in connection with the proof, which will be hereafter referred to, of possession under a grant, since 1790 up to the time of the filing of the petition in the court below, it was sufficient upon which to base a presumption of the existence of all papers necessary to constitute a title to the land possessed under it.

2. The objection of a lack of evidence that the alleged grant had ever been recorded may be considered with the one averring there was no sufficient evidence of possession upon which to base a presumption of a grant. It is claimed by the appellee that under the facts a presumption of a record, as well as of the grant, may be made. In regard to the matter of possession, it was stated in the opinion of the court below as follows:

"Our view of the evidence is that this tract of land was in the possession of Francisco Garcia exclusively during his lifetime from the beginning of this century, and that upon his death it passed to the hands of his children and remained in their possession until long after the transfer of sovereignty of the country to the United States, and is now in the possession of their grantees and their families. There have been very few claims based upon long possession more satisfactorily made out, in our minds, than is made out by the evidence in this case. These being the facts as we find them, we feel absolutely bound by

the doctrine established in the case of *The United States* v. *Chaves*, 175 U. S. 509." -

There are no adverse claimants to the land in question, and the proof of possession, exclusive in its nature, has been satisfactory to the court below. What constitutes such possession of a large tract of land depends to some extent upon circumstances, the fact varying with different conditions, such as the general state of the surrounding country, whether similar land is customarily devoted to pasturage or to the raising of crops; to the growth of timber or to mining, or other purposes. That which might show substantial possession, exclusive in its character, where the land was devoted to the grazing of numerous cattle, might be insufficient to show the same kind of possession where the land was situated in the midst of a large population and the country devoted, for instance, to manufacturing purposes. Personal familiarity with the general character of the country and of its lands, and also knowledge of the nature and manner of the use to which most of the lands in the same vicinity are put, have given the judges of the court below unusual readiness for correctly judging and appreciating the weight and value to be accorded evidence upon the subject of possession of such lands as are here involved.

Those judges will also be presumed to have been familiar with the cases involving possession decided here, such as *Whitney* v. *United States*, 167 U. S. 529, 546, and *Bergere* v. *United States*, 168 U. S. 66, 77. When, therefore, a majority of the court decides that the evidence of possession given in the case is most satisfactory, we are inclined to concur in that view unless it is clear that the court fell into a plain error, which we think is not the case. A majority of the court has held that, " There have been very few claims based upon long possession more satisfactorily made out, in our minds, than is made out by the evidence in this case." That the dissenting justices came to a different conclusion merely shows that the evidence was such that different inferences might be drawn therefrom, and under such circumstances we are indisposed to review and reverse the decision of the court upon such a question of fact.

In this case we therefore take the fact to be that there was a

possession under a grant of some kind, starting before 1790 and continuing, uninterrupted, until the filing of the petition. There was also evidence of the existence of a grant covering the land so possessed, together with evidence of the destruction of the documents constituting the grant, and also evidence of the destruction of the archives where the record of the grant had been, and the question arises whether such possession under these circumstances is not sufficient to presume not alone the existence of a proper and valid grant, but its proper record in the archives of Mexico, within the provisions of the treaty of 1853 with that country? We think it is, and that the evidence is sufficient not only to presume a grant but to presume any other matter which would have occurred in order to render the grant a perfectly valid one and the evidence of it sufficient within the requirements of the treaty. The treaty of 1853 did not require a record, in all cases, to be made at the seat of government of Mexico as a condition of the recognition of the grant by the Government of the United States. If the record had been made in the place where records of that nature were customarily made for lands granted in the vicinity, it was, as we think, within the provisions of the treaty. It appears sufficiently, in our opinion, that Paso del Norte was the place where the archives of Mexico were kept in regard to grants of land in that neighborhood, and there is some evidence of the destruction of those archives, or of part of them, including the record of the grant in question here, by the American troops.

The appellants further claim that a lieutenant governor had no authority to grant public lands unless he was a subdelegate or had been authorized by the governor to make the grant, and that there is here no evidence of either fact. But possession under a grant, so long continued and so complete as is the case here, may well authorize, if necessary, the presumption that the lieutenant governor was either a subdelegate or that he had been authorized or his act ratified by the governor and the grant duly recorded. It is not the case of basing a presumption of authority to make a grant upon the mere fact that the officer made it, and must therefore be presumed to have had authority. Lieutenant governors in the province of Louisiana

were, by virtue of their office, subdelegates, and as such had power to grant what is termed incomplete titles, and such grants might be confirmed. *Chouteau's Heirs* v. *The United States*, 9 Pet. 137, 144. There is no evidence that lieutenant governors in Mexico did not have the same powers, and a presumption of confirmation might be made in cases of long continued, exclusive and uninterrupted possession under such a grant. It is the long continued, uninterrupted and exclusive character of the possession here proved which is so important, and when supported, as it has been by the evidence of a grant, and of possession in accordance with and under it, the presumption of validity may safely be made.

A record may in a case like this be presumed to have been made, just as well as the existence of a grant may be presumed. Where the exclusive character of the possession is so long, so uninterrupted and so satisfactorily made out as in this case, and where other proof exists of the actual making of a grant of some kind of the land in controversy, the papers constituting such grant having been seen among the archives of Mexico, although the papers themselves have been destroyed, we think a case is made out showing not only that a grant had been made, but that it was duly located and recorded. The record was to be in the archives of Mexico, under the provisions of the treaty, and those archives, according to the evidence, may be presumed in fact to have existed at the place where the documents and their record were in truth destroyed. Taking all the evidence, there is room for the presumption of a record of the grant as well as that for the existence of the grant itself.

In *United States* v. *Chaves*, 159 U. S. 452, Mr. Justice Shiras, after speaking of the fact that there was ample evidence to show that the claimants had been put in juridical possession of the land covered by the grant from the government of New Mexico, which had authority to make it, continued, page 463 :

" However, we do not wish to be understood as undervaluing the fact of a possession so long and uninterrupted as disclosed in this case. Without going at length into the subject, it may be safely said that by the weight of authority, as well as the preponderance of opinion, it is the general rule of American

law that a grant will be presumed upon proof of an adverse, exclusive and uninterrupted possession for twenty years, and that such rule will be applied as a *presumptio juris et de jure,* wherever, by possibility, a right may be acquired in any manner known to the law.    1 Greenleaf Ev. 12th ed. sec. 17; *Ricard* v. *Williams,* 7 Wheat, 59, 109; *Coolidge* v. *Learned,* 8 Pick. 503.    Nothing, it is true, can be claimed by prescription which owes its origin to and can only be had by matter of record; but lapse of time accompanied by acts done, or other circumstances, may warrant the jury in presuming a grant or title by record.    Thus, also, though lapse of time does not, of itself furnish a conclusive bar to the title of the sovereign, agreeably to the maxim, *nullum tempus occurrit regi*; yet, if the adverse claim could have a legal commencement, juries are advised or instructed to presume such commencement, after many years of uninterrupted possession or enjoyment.    Accordingly, royal grants have been thus found by the jury, after an indefinitely long-continued peaceful enjoyment, accompanied by the usual acts of ownership.    1 Greenl. Ev. sec. 45.    The principle upon which this doctrine rests is one of general jurisprudence, and is recognized in the Roman law and the codes founded thereon, Best's Principles of Evidence, sec. 366, and was therefore a feature of the Mexican law at the time of the cession."

In the still later case of *United States* v. *Chaves,* 175 U. S. 509, long continued and uninterrupted possession of lands in Mexico, beginning long prior to the transfer of the territory to this country and continuing after that transfer, was held sufficient upon which to base presumptions enough for a legal judgment in favor of such possession in the absence of rebutting circumstances.    It is true there was an original grant to one of the occupants, Antonio Gutierrez, but the claimant was unable to present any direct conveyance from the original grantee or from his heirs with which he was in any way connected. He relied in fact upon evidence of possession by himself and his predecessors in title.    Mr. Justice McKenna, in delivering the opinion of the court, made an extended examination of the law in regard to presumptions from possession, and it was held

that proof of possession may be sufficient to admit of a presumption that everything had been done that was necessary to be done by way of a grant or conveyance of the title to the individual in possession or his predecessors.

But the court below has not acted in this case upon evidence of mere possession, unaccompanied by any written evidence conferring, or professing to confer, a title of some description.

In *United States* v. *Power's Heirs*, 11 How. 570, 580, the grant actually proved was held to have no force, and it was alleged that those under whom plaintiff claimed possession held by some verbal permission from the government for many years under France and Great Britain. But no proof, even of that fact, was made, and as said in the opinion of the court, " if there had been such proof, it would be of no value, as the District Court did not possess power to act on evidence of naked possession unaccompanied by written evidence conferring, or professing to confer, a title of some description."

To the same effect is *United States* v. *Heirs of Rillieux*, 14 How. 189, where it was said that under the acts of Congress no decree could be founded upon mere possession.

In this case proof was given of a grant of some nature to petitioner's predecessor, which covered the land in question, accompanied by proof that such grant had been actually destroyed by the American troops, so that it could not be produced. Proof of the grant tended to characterize the possession which was also proved, and to render it of an adverse and exclusive nature. The lower court found as a fact the exclusive possession of such land by Garcia during his lifetime, from the beginning of the century, and then by his children, until long after the transfer of the sovereignty of the country to the United States, and that such possession continued in the hands of their grantees and their families. Evidence of the actual existence of the grant, together with evidence of this kind of exclusive possession under a claim of title, is more than mere proof of naked possession given solely for the purpose of therefrom inferring, in the absence of all other evidence of its existence, that a grant had once been made. It does not come within the principle of the above cited cases nor violate the act of 1891, establishing the court.

We do not understand that the treaty or that act made it absolutely necessary that a grant should actually be produced upon the trial, and that if one had been executed and by some accident destroyed, no proof could be given of its contents, or any proof of possession of the lands in accordance with the grant be received. Nor do we understand that it was requisite that a record of the grant should be produced, in all cases, or that in its absence the petitioner must inevitably fail.

The contents of written instruments may be proved by parol, when it is shown that the instrument itself has been lost or destroyed under such circumstances as to show the loss or destruction was not the voluntary and intentional act of the party claiming a benefit under its provisions. And in such case as this we do not think the treaty or the act of Congress was intended to debar parol proof of the existence and of the contents of a grant which had been destroyed under the circumstances detailed, or that under such circumstances a presumption that the grant had been recorded could not be indulged. *United States* v. *Sutter*, 21 How. 170–174; *United States* v. *Castro*, 24 How. 346, 350; *Peralta* v. *United States*, 3 Wall. 434.

Within the cases heretofore cited, we are of opinion that the evidence of possession was sufficient, in connection with the other evidence referred to, upon which to base a presumption that the petitioner had a title to the land which should be confirmed, within the treaty of 1853 and the provisions of the act of 1891, establishing the Court of Private Land Claims, and the judgment should, therefore, be

*Affirmed.*

MR. JUSTICE GRAY and MR. JUSTICE WHITE took no part in the decision of this case.