## WESTBROOK MANUFACTURING COMPANY

*vs.*

## LEWIS P. WARREN and others.

## Cumberland.    Opinion August 6, 1885.

*Waters.   Mill owners.   Irreparable injury.   Injunction.*

A bill in equity by one mill owner to enjoin other mill owners, upon the opposite side of the stream at the same power, from using more than one-half of the water, complained that the defendants had, within ten days, commenced to use, and were continuing to use, and threatening to use in the future more water than they were lawfully entitled to, thereby depriving the plaintiff of sufficient water to run its mill, some portions of which had to be shut down throwing out of employment some two hundred persons. *Held,* that the injury claimed did not appear to be of that permanent or irreparable character necessary to justify or require the interposition of a court of equity by way of injunction. *Held* further, that the bill, charging that all the defendants together used more than one-half of the water, and not stating which of

the defendants was using more water than he was entitled to, is too indefinite and general in its averments to found a decree for an injunction upon.

ON REPORT of the presiding judge.

Bill in equity, heard on bill and demurrer.

(Averments of the bill.)

" And thereupon sayeth unto your honors : your orator is the owner and occupant of the shores and upland of the easterly side of the Presumpscot river, and of the easterly half of the bed of said river, and of one-half of the water and power of said river, at the upper falls, at Saccarappa, in said town of Westbrook, upon which easterly shore and easterly half of the bed of said river, there has been, as your orator is informed and believes, from time immemorial, a mill or mills, and a dam or dams, for the purpose of furnishing water power to said mill or mills ; and which power has, as your orator is informed and believes, from time immemorial been used as appurtenant to said mill or mills ; of which shore, bank, easterly half of the bed of said river, half of the water of said river, mill or mills, dam, water power, and the appurtenant use thereof, as aforesaid, have belonged and been enjoyed by your orator and its predecessors in title, from time immemorial ; and your orator now owns, occupies and has upon said bank, a cotton mill operated and intended to be operated in connection with the dam aforesaid, and by the power aforesaid, and which can not be operated successfully, nor except at great expense disproportionate to and inconsistent with its successful operation, unless in connection with said dam and power, and unless your orator receives for the purpose of such operation, the half of the water and power of said river, to which your orator is entitled as aforesaid.

"And your orator further complaining, showeth unto your honors, that said mill has twelve thousand spindles, and the number of persons employed in and about said mill is about three hundred, and that your orator, by law and by right, is entitled to one-half of the flow, power and use of the water of said river, for the operation of said mill, and that your orator would be irremediably damaged and injured by deprivation of

the use of such share of said water and power, and would suffer thereby great damage in the operation of said mill, including loss of profits, diminution in the quantity and quality of goods manufactured, controversies with the persons employed in and about said mill, and other losses and injuries; and that such damages are of a kind not capable of being estimated, and for which adequate and complete compensation could not be recovered by any action at law.

"And your orator further complaining, showeth unto your honors, that the said Lewis, Charles H. Towle, John, Woodbury, Frank, Freedom, George, Charles F. Warren and William, and their agents, and servants, are owners and occupants of the westerly shore and bank of said river at the falls aforesaid, and are entitled, as such, to the use of one-half of the water and power of said river, and no more; and yet have lately, to wit, within ten days last past, commenced to use, and are now using, more than the said half of said power and water; and thereby on the twenty-first day of the current month, at about three o'clock, afternoon, they used and had used so much more than their share of said water and power, as to compel complainant to shut down the greater portion of the said mill, so that complainant, in consequence thereof, did shut down the greater portion of said mill, and was compelled to keep and did keep the same shut down, and was unable to run the same for the remainder of the day, and thereby threw out of employment about two hundred persons employed as aforesaid by your complainant in the mill aforesaid, to the great damage, loss and injury of the complainant.

"And your orator, further complaining, showeth unto your honors, that said Lewis, Freedom, Charles H. Towle, John, George, Charles L. Warren, William, Woodbury, and Frank, although requested to desist from using more than their share of water and power as aforesaid, refuse and decline to so desist, and threaten to continue, and are continuing, to use more than their said share; and have thus compelled complainant to shut down the greater part of its mill, in manner aforesaid, several times since said twenty-first day of November.

"And your orator further showeth unto your honors, that while your orator uses upon its side of the river and in connection with its own mill, only four (4) Knowlton wheels of sixty (60) inches diameter, three under twelve feet "head," and one under ten feet "head," the said owners and occupants of said west side of the river, their agents and servants, are using and running as aforesaid, in connection with their mills upon their side of said river, and for the purpose of using the water and power of the river at the falls aforesaid, one Knowlton wheel, sixty (60) inches in diameter, one Chase wheel, thirty-six (36) inches diameter, said two wheels being used by said Woodbury K. Dana and Frank J. Dana, in the mill owned by said George, Charles L. Warren, and William; also one Knowlton wheel, sixty (60) inches diameter, in use by said John W. Warren in the mill owned by said Lewis P. Warren; also one Tuttle wheel forty-eight (48) inches in diameter, in the mill occupied by said John W. Warren and Charles H. Towle, and owned by said Lewis P. Warren; also two (2) double Kidder saw mill wheels and two (2) small wheels in the mill occupied by said Freedom Meserve, and owned by said Lewis P. Warren, all of the above wheels being under twelve (12) feet head; that the owners and occupants of said west side of said river have been running, and threaten, and are continuing to run all or nearly all said wheels simultaneously; that said wheels so run on said west side of said river, when in operation together, draw and use more than twice as much water as the said wheels of your orator upon the east side of said river; and that the water of said river and power thereof, is not sufficient to drive all of said wheels, so run by said owners and occupants of said west side of said river, including those of your orator.

"And your orator, further complaining, showeth unto your honors, that it has several times requested said Lewis, Freedom, Charles H. Towle, John, George, Charles F. Warren, William, Woodbury, and Frank, to desist from the use of more than their share of the power and water aforesaid; but they neglect and refuse so to desist."

*William L. Putnam* for the plaintiff.

The complainant's right to enjoy one-half of the power of the stream, is alleged to have been in use from time immemorial, and under the demurrer is not disputed; and also that the respondents are using more than their share of the stream is to be taken as admitted.

The complainant sets out fully the nature of its mill, alleging that it is a cotton mill, operating twelve thousand spindles and employing about three hundred persons; and that it would be irremediably damaged and injured by diverting the use of its share of the water and power, and would "suffer thereby great damage in the operation of said mill, including loss of profits, diminution in the quantity and quality of goods manufactured, controversies with persons employed in and about said mill, and other losses and injuries; and that said damages are of a kind not capable of being estimated, and for which adequate and full compensation can not be recovered by any action at law. "

Even without these allegations the court might well assume, from the nature of complainant's mill, that its regular operation for want of sufficient water would lead to results of the character set out in the bill, which cannot be estimated or covered by damages at law, and that such results would cause a very serious and irremediable injury to the owner of the mill.

In this respect the case is one eminently calling for the interposition of a court of equity, and of a class upon which the equity courts have looked with great favor.   Angell on Water-courses, § 445.

Upon the demurrer defendants have no right to claim that there is any controversy whatever between the parties as to the right, or that anything remains except to prevent and remedy the injury, to do which successfully requires the admeasurement of the water and a proper division of it between the parties to the privilege, which is entirely beyond the power of a jury to accomplish.

If driven to law, the verdict of a jury would establish no right, because upon the pleadings the right is admitted, but would only assess damages for an injury to the right, thus leaving a verdict which would in no way enable the parties to make a

proper division of the water, while a court of equity with the
aid of a master could, among all the wheels run by the respond-
ents, ascertain and determine to what extent and at what times
each of the respondents could run their several wheels, and how
many of them they could run together.

There is all the necessity of taking this case from the jury
and sending it to a master that there is for settling, according to
the practice of the English chancery, general averages upon
marine losses or any other matters requiring nice and complicated
computations.

Indeed upon the admitted allegations of the bill, and we
believe this will be found to be the same when the answer and
proofs are in, this is nothing more than a case of equitable partition
of water ; and the question is not one of right, but of adjustment
and division of admitted rights.

In *Ballou* v. *Hopkinton,* 4 Gray, p. 324, Chief Justice SHAW
says on p. 328 : " In regulating the rights of mill owners and all
others in the use of a stream wherein numbers of persons are
interested, equity is able by one decree to regulate their respect-
ive rights, to fix the time and manner in which water may be
drawn and within what limits it shall or shall not be drawn by
all parties respectively ; and thus it is peculiarly adapted to the
relief sought against such alleged nuisance and disturbance, and
affords a more complete and adequate remedy than can be
afforded by one or many suits at law."

In that case there had been no suit at law to establish the
title, and so far as can be seen from the allegations of the bill,
the nature of the threatened injury was the same as that of the
case at bar to the extent that the complainants in each case were
owners of mills for the manufacture of cotton goods ; and the
court fully considered the question of jurisdiction to proceed to
an injunction in equity and sustained it.

Counsel further cited : Angell on Water-courses, § § 445,
447 ; *Burnham* v. *Kempton,* 44 N. H. 78 ; *Belknap* v. *Trimble,*
3 Paige, 601 ; *Olmstead* v. *Loomis,* 5 Seld. 423 ; *Lyon* v.
*McLaughlin,* 32 Vt. 423 ; *Ranlet* v. *Cook,* 44 N. H. 512 ; *Bean*
v. *Coleman,* 44 N. H. pp. 539 and 542 ; *Imperial Gas Light &*

*Coke Company* v. *Broadbent*, 7 House Lords Cases, *601; *Moor* v. *Veazie*, 31 Maine, 377; *Porter* v. *Witham*, 17 Maine, 294; *Van Bergen* v. *Van Bergen*, 3 Johns. Ch. R. 287; High Injunctions, (2 ed.) § 740; Gould Waters § § 506, 510; *Parker* v. *Winnipiseogee Lake Cotton and Woollen Co.* 2 Black, 551, in enumerating cases where the injury would be irreparable, names "loss of trade."

We presume, however, it will be claimed that the cases in this state sustain the demurrer. We desire to remark that none of them contained the element involved in this case unless it be *Jordan'* v. *Woodward*, which we shall hereafter cite. That is, none of them relate to the practical measuring or adjusting of rights among co-tenants.

*Jordan* v. *Woodward*, 38 Maine, 424, as the facts appear in the opinion, we believe not to be in harmony with the law, nor indeed in harmony with the expressions contained in the opinion itself.

*S. C. Strout, H. W. Gage* and *F. S. Strout*, for the defendants.

WALTON, J. We do not think the injunction prayed for in this case can be rightfully granted.

The unlawful diversion of the water of a stream is a nuisance, for which one thereby injured may maintain an action at law. And in some cases, such an invasion of one's right may be restrained by an injunction issued by a court of equity. But, as a general rule, a remedy by injunction is obtainable only when the right is clear, and the invasion of it, actual or threatened, is such as will result in permanent or irreparable injury. In all other cases the injured party must be content with such redress as is afforded by an action at law. The wrong complained of in this case is that the defendants had, within ten days, commenced to use, and were continuing to use, and threatening to use in the future, more water than they were lawfully entitled to; thereby depriving the plaintiffs of sufficient water to run their mill, and obliging them to shut down portions of it, and thus throwing out of employment some two hundred persons.

The injury claimed to have been thus received is considerable. But it does not appear to be of that permanent or irreparable character necessary to justify or require the interposition of a court of equity by way of injunction. It is not like the building of a dam or the digging of a ditch, by which the water would be permanently diverted from the plaintiffs' mill. It seems to be no more than a temporary invasion of the plaintiffs' right, and not likely to be continued, unless the defendants claim that they are entitled to the amount of water thus taken from the plaintiffs, in which case, the right should he tried and determined in an action at law before application is made for an injunction. *Denison Man. Co.* v. *Robinson Man. Co.* 74 Maine, 116; *Jordan* v. *Woodward*, 38 Maine, 423.

And there is another difficulty in this case. The defendants are not joint owners or occupants of the mills on the westerly side of the river; and, for aught that appears in the bill the wrong complained of may have been committed wholly by the owners or occupants of only one of these mills, the owners or occupants of the other mills being entirely innocent of using or threatening to use more water than they are lawfully entitled to. And yet the court has no means of distinguishing between the innocent and the guilty. The bill charges that all the defendants, in the aggregate, are using more than half the water in the river. But it does not charge that each one of them is using more than he is entitled to. The effect of such an averment is to make it certain that some one of the defendants is guilty of using more than his share of the water, but not that each and every one of them is. Consequently, if the court should grant the injunction prayed for, it is by no means certain that innocent parties might not be enjoined, and be required to pay a portion of the costs of the suit. Surely, the court ought not to be required to take such a risk as that. In this particular, it is the opinion of the court that the bill is too indefinite or general in its averments to found a decree for an injunction upon.

<em>Demurrer sustained. Bill dismissed with costs.</em>

PETERS, C. J., VIRGIN, LIBBEY and EMERY, JJ., concurred.

HASKELL, J., having been of counsel did not sit.