Civil action, brought by plaintiffs in a proceeding for the partition of two tracts of land, containing respectively 15 acres and 3 1/2 acres, and alleged that the defendant had no interest in either tract.
Hillary Murray and Margaret Powers while in slavery lived together as man and wife and afterwards complied with the act of 1866 (C.S. 2497) for the purpose of validating their union. Margaret was the mother of I. M. Powers, Alice, Phyllis, Hillary, Sam, Balaam, and Grace. Alice, Hillary, and Sam died intestate and without issue. Phyllis married David Gavin and four of their children are plaintiffs; Grace married Charles Powers and died during the lifetime of Margaret, leaving one child, the plaintiff, Maggie Wilson.
The plaintiffs offered in evidence the following deeds:
1. A deed from James Wells and wife to Margaret Murray, dated 5 March, 1881, conveying 15 acres.
2. A deed from James Wells and wife to Margaret Murray, dated 7 March, 1883, conveying 10 acres.
3. A deed from Margaret Murray to Balaam Murray, dated 4 June, 1908, conveying the 10 acres above described.
4. A deed from James Wells to Hillary Murray, Jr., dated 12 August, 1884, conveying 5 1/2 acres, which included the 3 1/2 acres described in the complaint. It was admitted that Hillary, Jr., owned this tract at the time of his death.
The plaintiffs alleged that Margaret conveyed the ten-acre tract to Balaam as an advancement. Margaret survived her husband and died 14 June, 1914.
The verdict was as follows: *Page 355 
1. Was the land conveyed to Balaam Murray by Margaret (337) Murray, to wit, ten acres, intended as an advancement? Answer: "Yes."
2. What was the value of the ten acres? Answer: $1,000."
3. Was Margaret Murray the owner of the 15-acre tract of land at her death? Answer: "No."
4. What was the value of the said 15 acres? Answer: $1,125."
5. Did Margaret Murray execute and deliver to Hillary Murray a deed for the 15-acre tract? Answer: "Yes."
Judgment was rendered on the verdict and the plaintiffs appealed.
It is admitted, as we understand, that if Margaret's conveyance to Balaam of the 10-acre tract was an advancement and Margaret died seized and possessed of the fifteen acres described in the complaint, Balaam has no interest in the tract last named because he claims an interest in it only as an heir at law of his brother Hillary. The defendant alleges that he and Hillary and Sam purchased and paid for the land described in the two deeds executed by James Wells and his wife and that Margaret took the title in her own name and held it in trust for them and that after Sam's death she executed the trust by conveying one tract to Balaam and the other to Hillary.
The answer further states that Margaret's deed to Hillary conveying the 15-acre tract was never registered and has been lost or destroyed if not withheld by some of the plaintiffs. For the purpose of establishing these allegations the defendant was permitted to testify at the trial substantially as follows: "I was born in 1860. Hillary Murray, (Sr.), was my father and Margaret Murray my mother. She lived in Duplin County. I have a deed from my mother for ten acres of land. She made two deeds at the same time or had Mr. Bill Joe to make them; but both were not made to me. She never made but one deed to me for the same piece of land. Mr. W. J. Boney went to my mother's house, and me and Maggie Wilson and Hillary and Margaret were present. I don't know how old Maggie was at that time; she was fixing to get married. In the presence of Maggie, Hillary, Margaret and myself Mr. Boney wrote two deeds, one for me and the other for Hillary." To the testimony relating to the deeds the plaintiffs in apt time objected.
When a deed has once been delivered its subsequent loss or destruction will not divest the title of the grantee, and its contents may be shown by competent evidence when the due execution and the loss are properly made to appear; but as the deed is the best evidence of its own *Page 356 
contents it must be produced unless it has been lost or destroyed, (338) or is in the hands of the adverse party who fails to produce it, or unless its absence is otherwise satisfactorily accounted for. If the original cannot be produced and it becomes necessary to offer secondary evidence of its contents, such contents, including of course its legal operation, must be established by the testimony of one who has "first-hand knowledge on the subject"; for hearsay based upon statements made by third parties is not deemed sufficient to impart competent and correct information of the matter in dispute. Propst v.Mathis, 115 N.C. 527. This "first-hand knowledge" does not necessarily imply testimony of verbal precision, but it should embrace entirety of parts. Aside from the practical impossibility of recalling the identical words of a lost deed, they are not essential in proof of the contents. But is necessary to prove the execution of the deed, its delivery, its loss, the material parts, and its legal operation. In Taylor v. Riggs, 1 Peters 591, p. 600, Chief Justice Marshall observes: "When a written contract is to be proved, not by itself, but by parol testimony, no vague, uncertain recollection concerning its stipulations ought to supply the place of the written instrument itself. The substance of the agreement ought to be proved satisfactorily; and if that cannot be done, the party is in the condition of every other suitor in court who makes a claim which he cannot support. When parties reduce their contract to writing the obligations and rights of each are described and limited by the instrument itself. The safety which is expected from them would be much impaired if they could be established upon uncertain and vague impression made by a conversation antecedent to the reduction of the agreement." And in Plummer v. Baskerville, 36 N.C. 252, Chief Justice Ruffin uses this language: "It may at once be stated that sufficient inquiry appears to have been made for this instrument, if it ever existed, to authorize the declaration of its loss. Still it is incumbent on the plaintiffs to show its existence at one time and its contents. At law the existence of an instrument as a genuine one is shown by proving its execution according to the nature of the instrument, that is to say, by the subscribing witness, if there be one, or by proof of handwriting. This is ordinarily true in equity also. Goodees v. Lake, 1 A. 246. It cannot be otherwise, for in reason as well as in law things which do not appear must be regarded as if they did not exist. After it be thus shown that the instrument existed its operation and effect may be established by proving the contents by the best evidence in the party's power, such as an examined copy, the registry of it, or the oral testimony of witness who can state the contents, or the admission of its contents by the person executing it." In Fisher v. Carroll, 41 N.C. 485; Judge *Page 357 
Pearson adds that the strictest and clearest proof will be required if the execution or contents of the written instrument are denied. 4 Chamberlain's Mod. Law of Ev. 2708; 3 Wigmore on Ev. 2105; McKelvy on Ev. 272, et seq.;Plummer v. Baskerville, supra; Deans v. Dortch, 40 N.C. 331;Loftin v. Loftin, 96 N.C. 95; Jennings v. Reeves, 101 N.C. (339) 447; Gillis v. R. R., 108 N.C. 441; Jones v. Ballou,139 N.C. 526.
The defendant's testimony falls short of these requirements. It will be noted that only one of the plaintiffs was present when Boney wrote the two deeds. There is no evidence that the defendant read the deed which was delivered (as he says) to Hillary or that he could read; so far as the record shows his testimony was hearsay. He did not testify that diligent search had been made or that the deed had been lost or destroyed; nor did he trace it into the hands of either of the plaintiffs. He alleged that the plaintiffs have it, but served no notice to produce it, and laid no adequate foundation for proof of its legal operation. Nevertheless, the jury were permitted to consider this testimony and that of Rivenbark, which as it now appears in the record is subject to the same objection; and upon their testimony the jury no doubt responded to the third and fifth issues. In overruling the objection of the plaintiffs as to the evidence concerning the execution and loss of the deed there was error which entitles them to a new trial.
New trial.
Cited: Downing v. Dickson, 224 N.C. 456; McCollum v. Smith, 233 N.C. 16.